CITY OF SAN ANTONIO, Appellant,

v.

Mark HARTMAN, Independent Executor of the Estate of Donna O'Bar, Deceased, and on behalf of her Statutory Beneficiaries; Mark Hartman, Personal Representative of the Estate of Richard Hartman, Deceased, and on behalf of his Statutory Beneficiaries; Brenda Pivonka, Individually and as Administratrix of the Estate of Jennifer Allensworth, Deceased; and Justin Hartman, Individually and as Sole Heir of the Estate of Mallori Hartman, Deceased, Appellees.

No. 04–04–00162–CV.

Court of Appeals of Texas,
San Antonio.

Nov. 10, 2004.

Rehearing Overruled Jan. 14, 2005.

Elsa Giron Nava, Asst. City Atty., San Antonio, for appellant.

Les Mendelsohn, Ricky J. Poole, Les Mendelsohn & Associates, P.C., San Antonio, Glenn M. Douglas, L.L.P., Houston, for appellees.

Sitting: ALMA L. LÓPEZ, Chief Justice, KAREN ANGELINI, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by KAREN ANGELINI, Justice.

The City of San Antonio ("City") appeals an interlocutory order rendered in favor Mark Hartman, Independent Executor of the Estate of Donna O'Bar, Deceased, and on behalf of her Statutory Beneficiaries; Mark Hartman, Personal Representative of the Estate of Richard Hartman, Deceased, and on behalf of his Statutory Beneficiaries; Brenda Pivonka, Individually and as Administratrix of the Estate of Jennifer Allensworth, Deceased; and Justin Hartman, Individually and as Sole Heir of the Estate of Mallori Hartman, Deceased ("Hartman"), denying the City's plea to the jurisdiction based on governmental immunity. The City presents four issues for review: (1) the City did not owe a duty to the decedents; (2) an emergency condition existed that preserved immunity; (3) the barricades provided adequate warning and/or the City did not know that the barricades needed to be replaced; and (4) the claims against the City were based on design or discretionary decisions. We overrule all four issues and affirm the judgment of the trial court.

### Factual and Procedural Background

Four persons drowned when the vehicle in which they were traveling was swept away by floodwaters that had accumulated at the intersection of two roadways. The two roadways, Rigsby Avenue and Shrader Street, are located within the City of San Antonio. At the time of the accident, the decedents were traveling eastbound on Rigsby Avenue, also known as State Highway 87.

During the hours leading up to this incident, the City had been experiencing significant amounts of rainfall, and flooding had begun throughout the City. Specifically, at some point on the evening of October 17, 1998, significant flooding had occurred at the intersection of Rigsby Avenue and Shrader Street. The flood waters had inundated the area just to the east of Shrader Street (which runs north to south) and created a virtual "running river of water" that flowed over and bisected Rigsby Avenue (which runs east to west), making the road impassable to vehicles.

The City and the State were aware that such flooding had occurred on roadways throughout the City. Appropriate employees of both governmental entities had begun barricading and placing flares on roads and highways that had become hazardous or impassable. Concerning the intersection of Shrader and Rigsby, the facts are disputed and there is conflicting testimony concerning both the location and number of barricades; however, it is generally accepted that at some point, both during and after the events that concern this suit, barricades belonging to both State and City employees were present and used to block off sections of the roadway and intersection.

Hartman, representing the families of the deceased, brought an action pursuant to the Texas Tort Claims Act against the City of San Antonio, alleging that the water on the roadway constituted a defective condition of real property for which the City was responsible and negligent under a premises defects theory of liability. In response, the City asserted several claims under the theory of governmental immunity and filed a plea to the jurisdiction pur-

suant to Texas Rule of Civil Procedure 85; in the alternative, a "no evidence" motion for summary judgment pursuant to Texas Rule of Civil Procedure 166a(i); and, further in the alternative, a motion for summary judgment pursuant to Texas Rule of Civil Procedure 166a. The trial court denied these motions. The City now appeals the interlocutory order denying its amended plea to the jurisdiction pursuant to section 51.014(a)(8) of the Texas Civil Practice and Remedies Code.[1]

### PLEA TO THE JURISDICTION

■ The City's plea to the jurisdiction presents us with a preliminary issue for immediate review based on subject matter jurisdiction. Subject matter jurisdiction is essential for a court to have the authority to resolve a case; it is never presumed and cannot be waived. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex.1993).

### A. Governmental Immunity

■ In Texas, governmental immunity from suit deprives a trial court of subject matter jurisdiction. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex.2004). Governmental immunity includes two distinct principles: (1) immunity from suit, and (2) immunity from liability. *Id.* Immunity from liability is an affirmative defense, while immunity from suit fundamentally affects the trial court's subject matter jurisdiction. *Id.*

Utilizing a narrow exception to this common law doctrine, Hartman brought suit under the Texas Tort Claims Act (the "Act"). The Act creates a unique statutory scheme in which the two immunities are co-extensive: "[Governmental] immunity to *suit* is waived and abolished to the extent of *liability* created by this chapter." TEX. CIV. PRAC. & REM. CODE ANN. § 101.025(a) (Vernon 1997) (emphasis added). Thus, the City is immune from suit unless the Act expressly waives immunity. We have previously laid out the scope of the Act's waiver of immunity:

> In order for immunity to be waived under the [Act], the claim must arise under one of the three specific areas of liability for which immunity is waived, and the claim must not fall under one of the exceptions from waiver. The three specific areas of liability for which immunity has been waived are: (1) injury caused by an employee's use of a motor-driven vehicle; (2) injury caused by a condition or use of tangible personal or real property; and (3) claims arising from premise defects.

*Medrano v. City of Pearsall*, 989 S.W.2d 141, 144 (Tex.App.-San Antonio 1999, no pet.). Here, Hartman proceeded on a premise defects theory of liability.

### B. Premises Liability

Under the Act, immunity is waived and a governmental unit is liable for "personal injury and death so caused by a condition

---

1. Section 51.014 provides that:
 (a) A person may appeal from an interlocutory order of a district court, county court at law, or county court that:
 . . .
 (8) grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001.
 TEX. CIV. PRAC. & REM. CODE § 51.014(A)(8). Section 101.001 defines "governmental unit" to include "a political

subdivision of this state, including any city." TEX. CIV. PRAC. & REM. CODE ANN. § 101.001 (Vernon 1997).
 The City appeals neither the denial of its "no evidence" motion for summary judgment nor, in the alternative, its motion for summary judgment. An order denying a motion for summary judgment is an interlocutory order, is not a final judgment, and, under most circumstances, is not appealable. *Humphreys v. Caldwell*, 888 S.W.2d 469, 470 (Tex.1994).

or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) (Vernon 1997). In cases, such as ours, where the claim involves real property, the Act limits the governmental unit's liability as follows:

(a) If a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises.

(b) The limitation of duty in this section does not apply to the duty to warn of special defects such as excavations or obstructions on highways, roads, or streets or to the duty to warn of the absence, condition, or malfunction of traffic signs, signals, or warning devices.

*Id.* TEX. CIV. PRAC. & REM. CODE ANN. § 101.022 (Vernon 1997). Therefore, where a special defect is at issue, an exclusion to the ordinary premises limitation applies, and the Act raises the duty a governmental entity owes to the claimant to that of an invitee. *State Dep't of Highways & Pub. Transp. v. Payne,* 838 S.W.2d 235, 238 (Tex.1992).

■ Addressing both types of defects, Hartman first alleged in his petition that the unexpected presence of floodwaters obstructing Rigsby Avenue constituted a "special defect" for which the City breached its duty of care to the decedents. Under the invitee standard, the government occupant has a duty to warn of dangerous conditions of which the government has knowledge or which the government would have discovered in the exercise of ordinary care. *Id.* at 237. That duty also requires the owner to use ordinary care to reduce or eliminate an unreasonable risk of harm created by the condition. *Id.*

■ In the alternative, Hartman alleged a "premise defect." Under the licensee standard, the government occupant owes the duty not to injure the licensee by willful, wanton, or gross negligence. *State v. Tennison,* 509 S.W.2d 560, 562 (Tex. 1974). An exception to this general rule, however, is that when the licensor has knowledge of a dangerous condition, and the licensee does not, a duty is owed on the part of the licensor to either warn the licensee or make the condition reasonably safe. *Id.* The duty to warn licensees of dangerous conditions arises only in those instances where the licensor knows of the condition likely to cause injury. *Id.* Actual knowledge, rather than constructive knowledge, of the dangerous condition is required. *Id.*

Both standards, thus, require the City to either warn the decedents of dangerous conditions or make safe those same conditions if it had actual knowledge at the time of the flooding. Therefore, regardless of the level of duty imposed, Hartman contends that the City is liable for the deaths of the decedents because: (1) the condition of Rigsby Avenue at all times material created an unreasonable risk of harm to persons traveling on the roadway; (2) the City, owner of and party in control of the roadway in question, actually knew about the dangerous condition present; (3) the decedents did not have actual knowledge of the dangerous condition; (4) the City did not exercise ordinary care to protect persons traveling west on Rigsby Avenue from the dangerous condition, either by warning of the danger or by making it safe; and (5) the City's failure to exercise ordinary care proximately caused the deaths of the decedents.

■ A liberal construction of these allegations, as required, demonstrates that Hartman successfully pleaded a claim against the City for a premises defect un-

der the Act.[2] *See Miranda*, 133 S.W.3d at 230. Therefore, in its plea to the jurisdiction, the City challenges the existence of jurisdictional facts and contends that it retains its governmental immunity due to exclusions and exemptions from the waiver of immunity found in sections 101.051 through 101.066 of the Texas Civil Practice and Remedies Code. The City presents the following issues for review:

(1) Did the City owe a duty to Plaintiffs' decedents?

(2) Did an emergency condition exist?

(3) Did the barricades provide adequate warning and/or did the City not know that the barricades needed to be replaced?

(4) Were such decisions of the City barred from claim as being design and/or discretionary?

### C. Standard of Review

■■■■■ When a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court considers relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *Miranda*, 133 S.W.3d at 227. When a jurisdictional challenge implicates the merits of a plaintiff's cause of action and the plea to the jurisdiction includes

2. If a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Miranda*, 133 S.W.3d at 226. We must construe the pleadings in the plaintiff's favor and look to the pleader's intent. *Id.*

3. The supreme court has acknowledged that this standard mirrors that of a summary judgment brought under Texas Rule of Civil Procedure 166a(c). *See Miranda*, 133 S.W.3d at 228. The majority opinion in the *Miranda* case explained:

> We adhere to the fundamental precept that a court must not proceed on the merits of a case until legitimate challenges to its juris-

evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. *Id.* If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. If the evidence creates a fact question regarding the jurisdictional issue, however, the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. *Id.* at 227–28.

■■■■■ We review the trial court's ruling on a plea to the jurisdiction *de novo*. *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex.2002). When reviewing a plea to the jurisdiction in which the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor.[3] *Miranda*, 133 S.W.3d at 228.

### ISSUES ON APPEAL

### A. Duty

In its first issue, the City argues that the trial court erred in failing to grant its plea to the jurisdiction because the City

diction have been decided. This standard accomplishes this goal and more. It also protects the interests of the [City] and the injured claimants in cases like this one, in which the determination of the subject matter jurisdiction of the court implicates the merits of the parties' cause of action. The standard allows the [City] in a timely manner to extricate itself from litigation if it is truly immune. However, by reserving for the fact finder the resolution of disputed jurisdictional facts that implicate the merits of the claim or defense, we preserve the parties' right to present the merits of their case at trial.

*Id.* ("City" substituted for "State").

did not owe a duty to the decedents with regard to the roadway in question. We disagree. Duty is a threshold inquiry; if evidence in the record creates an issue of material fact, then the trial court did not err in denying the City's plea. *See Corbin v. City of Keller*, 1 S.W.3d 743, 746 (Tex. App.-Fort Worth 1999, pet. denied).

### 1. Conjunctive pleadings

■ Initially, the City formulates its duty argument under a defense of conjunctive pleading. The City argues that because Hartman's original petition refers to the City as "owner of and party in control of roadway in question," it must quite literally show that the City of San Antonio *both* owned and controlled Rigsby Avenue in order to succeed in its cause of action.[4] The City, however, cites no legal authority for its assertion, and we are unaware of such a defense.

■ To the contrary, Hartman brings forth an action based on premises liability, and it is well settled that a plaintiff must only show that the governmental entity owned, occupied, *or* controlled the premises, *or* created the dangerous condition before it can be held liable for the premise defect. *See City of San Benito v. Cantu*, 831 S.W.2d 416, 425 (Tex.App.-Corpus Christi 1992, no writ). This does not require a combination of two or more of these conditions; ownership of property is, in fact, unnecessary to prove liability based on a defect in the premises. *See Gunn v. Harris Methodist Affiliated Hosps.*, 887 S.W.2d 248, 251–52 (Tex.App.-Fort Worth 1994, writ denied) (holding that "control" over the premises is the threshold issue in a premises liability case).

### 2. The Municipal Maintenance Agreement

■ In the alternative, the City argues that TxDOT and the City have determined, by way of a 1974 Municipal Maintenance Agreement ("Agreement") between the City and the State, that TxDOT controls Rigsby Avenue and is responsible for barricading the subject roadway during flooding.[5] In support, the City cites to the following language of the Agreement:

> [It shall be the State's responsibility to] install and maintain normal markings necessary for directing highway traffic in a safe and efficient manner, which shall include normal route markers, directional and destination signs, speed limit signs, stop or yield signs that control the flow of traffic on State Highway routes, city limit signs, warning signs, centerline, lane line and no-passing barrierline stripes, painted or button medians or islands, edge lines, and such other pavement markings considered necessary for direction of traffic.

The City places particular emphasis on the State's declared responsibility in the Agreement for "warning signs," arguing

---

4. The City's brief states: "Therefore, ownership of the roadway must be proven or Plaintiffs' have not alleged any cause of action against Defendant."

5. Section 221.002 of the Texas Transportation Code provides:

> The commission and the governing body of a municipality, including a home-rule municipality, may agree to:
> (1) provide for the location, relocation, improvement, control, supervision, and regulation of a designated state highway in the municipality; and
> (2) establish the respective liabilities and responsibilities of the commission and the municipality under the agreement.

Tex. Transp. Code Ann. § 221.002 (Vernon 1999). This section provides that the State may contract with municipalities concerning the improvement, control, or supervision of a designated state highway. *Id.; Torres v. Texas Dep't of Transp.*, 88 S.W.3d 768, 771 (Tex. App.-Corpus Christi 2002, no pet.).

that this includes barricades. Moreover, the City declares that the "warning sign" language in the Agreement is "clear and specific" that the responsibility for barricading due to flooding on the roadway belongs to the State. We do not agree. While this portion of the Agreement appears to pass to the State the obligation to maintain most ordinary and usual highway markings, the Agreement says nothing about who is responsible for barricading or closing streets when there is flooding on the roadway. To the contrary, the Agreement provides that the City retains "all functions and responsibilities for maintenance, control, supervision and regulation which are not specifically described as the responsibility of the State." While neither party's argument conclusively establishes duty or control of the roadway, the evidence does create a fact question regarding the jurisdictional issue. Therefore, the trial court did not err in denying the City's plea to the jurisdiction.

### 3. The Barricades

██ In its final point on the issue of duty, the City argues that, even if City personnel placed barricades on the east side of the flooded crossing on Rigsby Avenue, this still should not shift legal responsibility to the City for the entire roadway when the accident occurred on the opposite (west) side of the crossing. Again, we disagree.

A constant point of contention throughout both Hartman's and the City's briefs is the presence, location and/or number of City barricades that were at the location of the flooding that is the subject of this suit. Both parties use favorable testimony concerning the barricades to demonstrate either the existence or absence of City control during the flood. Hartman points to evidence that tends to show that City barricades were present and that the City exercised control and, thus, held a duty to the decedents at the time of the accident. Conversely, the City points to evidence that tends to show that only State barricades were present at the crossing, or, in the alternative, that City barricades were only used on the opposite side of the flooded section of Rigsby Avenue from that which the decedents' automobile approached. Eyewitness testimony on the barricades, however, is both numerous and disparate.[6] Accordingly, we must take all evidence favorable to Hartman as true, and all doubts must be resolved in his favor. See Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548–49 (Tex.1985).

Because the evidence of duty creates a fact question regarding the jurisdictional issue, the fact issue must be resolved by the fact finder. Therefore, we hold that the trial court did not err in denying the City's plea to the jurisdiction. Accordingly, we overrule this issue on appeal.

---

**6.** The following testimony with regard to the presence and number of barricades is found in the court record:

(1) Robert Mancillas testified he saw one State barricade in the middle of the road on the west side of the bridge at 6:00 p.m.; (2) Stanley Irwin testified he saw no State barricades on the east side of the bridge at or around midnight; (3) Jeffery Collins testified that he thought he remembered there being a State barricade on the east side of the bridge, east of Shrader, at or around midnight; (4) Michael Miller testified he saw no barricades on the east side of the bridge, one State barricade on the west side of the bridge, at or around midnight; (5) Trenton Thames testified he saw one State barricade on the west side of the bridge at or around midnight; (6) Walter Yates testified he saw two barricades and a "road closed" sign in the middle of the road on the west side of the bridge at or around midnight; and (7) Richard Baring does not recall seeing any barricades on either side of the bridge at or around midnight.

## B. Emergency Condition

 In its second issue, the City argues that the trial court erred in denying the City's plea to the jurisdiction because, even if the City owed a duty to the decedents, an emergency condition existed pursuant to section 101.055(2) of the Texas Civil Practice and Remedies Code. The existence of an emergency condition creates a limited exception to the waiver of governmental immunity provided in the Act. *Id.* The existence of an emergency, however, is a matter of fact that ordinarily should be determined by the jury. *Mejia v. City of San Antonio,* 759 S.W.2d 198, 200 (Tex.App.-San Antonio 1988, no writ). Therefore, in order to succeed on its plea to the jurisdiction, there can be no issue of material fact regarding the existence of an emergency and whether the City complied with relevant laws. *Id.*

In support of its argument, the City presents evidence with which it seeks to show that the City of San Antonio had endured an emergency situation during the flooding subject to this suit. It notes that a disaster situation had been declared and that the Mayor of San Antonio had requested federal assistance and relief due to the extremity of the circumstances. Essentially, the City contends, therefore, that the "emergency exception" by its language completely removes any of its actions during the period of flooding from the reach of the Act. We disagree.

For the purposes of this provision, we must interpret an "emergency condition" much more specifically than what might be colloquially referred to as an "emergency." The emergency exception provision has most often been considered in connection with traffic accidents involving law enforcement and emergency vehicles. *See State v. Saenz,* 967 S.W.2d 910 (Tex.App.-Corpus Christi 1998, pet. denied); *Borrego v. City of El Paso,* 964 S.W.2d 954 (Tex.

App.-El Paso 1998, pet. denied). While we recognize that at least one sister court has determined that the statutory language of the emergency exception does not so limit its application to these instances, that court's decision on appeal followed a complete disposition of trial proceedings rather than an interlocutory order. *See City of Arlington v. Whitaker,* 977 S.W.2d 742, 744 (Tex.App.-Fort Worth 1998, pet. denied) (held that jury's finding that fire chief was responding to an "emergency" was sufficient to preserve City's immunity as a matter of law). Accordingly, we overrule this issue on appeal.

## C. Judgment as a Matter of Law

 In its third issue, the City argues that the trial court erred in denying the City's plea to the jurisdiction because the evidence conclusively proves that the City is entitled to judgment as a matter of law. Specifically, the City contends that the trial court erred in denying its plea to the jurisdiction because, even if it owed a duty to the decedents for a special defect or a premises defect, TxDOT barricades (that the City argues were present on the roadway at the time of the accident) were adequate to warn the decedents of the water on the roadway, or, in the alternative, the City did not know that the barricades needed to be replaced.

In support of its contentions, the City proffers the sworn testimony of one of its employees, Armando "Rocky" Aranda, that on the evening in question there were TxDOT barricades facing the decedents as they approached the subject bridge and that this was enough to adequately warn motorists against proceeding into the water on the roadway. Bolstering the testimony of Aranda, the City notes that at least two other vehicles had approached the flooded crossing and barricades and had successfully been turned away prior to

the decedents' accident. Aranda further testified that the City did not know that the barricades on the west side of the subject bridge were not in place at the time of the accident to prevent motorists from entering that area.

In addressing the City's argument that the State's barricades provided the decedents with adequate warning, Hartman cites to the testimony of a city employee stating that only one barricade was raised on the west side of the flooded crossing, and that this one barricade failed to block either lane of traffic. Hartman also derives from the testimony of two firefighters that had witnessed the accident that the cars that had turned around at the crossing before the accident had done so only after passing the alleged barricades and reaching the waterline. While this evidence does not serve to conclusively establish the inadequacy of warning, it does create an issue of material fact sufficient to survive the City's plea.

Hartman also takes issue with the City's arguments that there was no evidence that the City knew the barricades on the west side of the bridge were missing, while claiming that the evidence clearly demonstrates that the TxDOT barricades were in place at the time of the accident. The evidence and arguments become fairly convoluted at this point; however, the basis of Hartman's contention is that the City has misstated evidence with regard to the time, location, and presence of State barricades at the location in question. Regardless, the City has failed to show that it is entitled to judgment as a matter of law, and we, thus, hold that these issues must be decided by a finder of fact in conjunction with the intertwined jurisdiction arguments. Accordingly, we overrule this issue on appeal.

### D. Design and Discretionary Decisions

In its fourth and final issue, the City argues that Hartman's premises liability cause of action presents allegations of design and construction decisions that are barred under section 101.056 of the Texas Civil Practice and Remedies Code. The waivers of immunity from suit and liability in the Act do not apply to a governmental entity's failure to perform a discretionary act. *Wenzel v. City of New Braunfels*, 852 S.W.2d 97, 99 (Tex.App.-Austin 1993, no pet.). The City, thus, contends that its decision of whether to place barricades or take other precautionary measures is a discretionary act from which it is immune.

This section of the Act, however, applies to policy decisions regarding the design of roadways and the regulation of traffic. *See Maxwell v. Texas Dep't of Transp.*, 880 S.W.2d 461, 464 (Tex.App.-Austin 1994, writ denied). Here, the suit did not involve the discretionary placement of a stop sign or traffic signal or guardrail; rather, it involved the barricading of a temporarily, dangerously flooded roadway. To apply the exception to this set of facts would not further the legislature's reason for immunizing discretionary actions of governmental entities, which is "to avoid judicial review that would question the wisdom of a government's exercise of its discretion in making policy decisions." *State v. Terrell*, 588 S.W.2d 784, 787 (Tex.1979). Accordingly, we overrule this issue on appeal.

### CONCLUSION

Because the evidence creates a fact question regarding the jurisdictional issue, we overrule all four of the City's issues and affirm the decision of the trial court.