**CITY OF SAN ANTONIO, Petitioner,**

v.

**Mark HARTMAN, Independent Executor of the Estate of Donna O'Bar, Deceased and on Behalf of Her Statutory Beneficiaries, Mark Hartman, Personal Representative of the Estate of Richard Hartman, Deceased, and on behalf of his Statutory Beneficiaries; Brenda Pivonka, Individually and as Administratrix of the Estate of Jennifer Allensworth, Deceased, and Justin Hartman, Individually and as sole heir of the Estate of Mallori Hartman, deceased, Respondents.**

No. 05–0147.

Supreme Court of Texas.

Argued March 23, 2006.

Decided Aug. 31, 2006.

---

Elsa Giron Nava, Austin, Dan Pozza, San Antonio, for petitioner.

Ricky J. Poole, Law Office of Ricky J. Poole, Kimberly S. Keller, The Keller Group, Les Mendelsohn, Les Mendelsohn & Associates, P.C., San Antonio, Glenn M. Douglas, Crowley & Douglas, L.L.P., Houston, Christopher M. Cessac, Crowley, Douglas & Norman, L.L.P., Marfa, for respondents.

Ryan D. Clinton, Austin, for amicus curiae.

Justice BRISTER delivered the opinion of the Court.

This interlocutory appeal presents two jurisdictional questions. First, we have jurisdiction of the appeal only if a motion for rehearing en banc qualifies as a "motion for rehearing" that extends the deadline for a petition for review. Second, the trial court has no jurisdiction of the case if a 100–year flood is an "emergency situation" to which government immunity applies. Answering both questions in the affirmative, we reverse the court of appeals' judgment and render judgment dismissing the case.

## I.

On October 17, 1998, the City of San Antonio was visited by a rainstorm of historic proportions. The City was declared a disaster area, and requested state assistance. Responding to widespread flooding, local and state officials placed barricades and flares on roads and highways throughout the city.

One of the flooded roads was Rigsby Avenue near its crossing with Salado Creek. While almost a dozen witnesses disagreed about the number and location of barricades, it appears that at least one barricade faced motorists approaching from the west, and that two cars from that direction had stopped and turned around shortly before the incident at issue here.

This incident occurred about midnight, as four members of the Hartmans' extended family were returning from an out-of-town wedding reception.[1] According to eyewitnesses, the car drove straight into the flooded portion of Rigsby without slowing, and was swept away in the current. All four occupants drowned.

The Hartmans filed suit against the City under the Texas Tort Claims Act. The City responded with a plea to the jurisdiction asserting immunity. The trial court denied the plea, and the court of appeals affirmed.[2]

## II.

As an initial matter, the Hartmans assert we have no jurisdiction of this appeal because the City filed its petition for review too late.

■ The deadline for filing a petition depends on whether there was a motion for rehearing in the court of appeals. If so, the petition is due 45 days after the court overrules all timely filed motions for

---

**1.** The Plaintiffs ("Hartmans") are Mark Hartman, personal representative of the estates of Donna O'Bar and Richard Hartman, and on behalf of their statutory beneficiaries; Justin Hartman, individually and as sole heir of the estate of Mallori Hartman; and Brenda Pivonka, individually and as administratrix of the estate of Jennifer Allensworth.

**2.** 155 S.W.3d 460, 465–70 (Tex.App.-San Antonio 2004).

rehearing; if not, it is due 45 days after the court's judgment.[3]

Here, the City filed its petition more than 45 days after the court's judgment, but less than 45 days after the court of appeals denied its "Motion for Rehearing En Banc." The Hartmans argue the latter is not the kind of motion for rehearing contemplated by the rules, and thus did not extend the deadline. As they point out, unlike the plenary-power deadline in Rule 19.1 that runs from denial of "all timely filed motions for rehearing, *including motions for en banc reconsideration,*"[4] the petition deadline in Rule 53.7 does not include the italicized phrase.

But the explicit language of Rule 19.1 recognizes that the term "motions for rehearing" *includes* motions for en banc reconsideration as a subset of the broader category. While Rule 49.7 entitled "En Banc Reconsideration" does not contain the word "rehearing,"[5] it is a subpart of Rule 49 entitled "Motion and Further Motion for Rehearing." At least two other rules of appellate procedure refer to en banc reconsideration as a "rehearing."[6]

It is not surprising that the appellate rules use "rehearing" and "reconsideration" interchangeably. As a "rehearing" requires no additional briefing or argument,[7] it thus implies nothing more than a "reconsideration." And whether such motions are addressed to a panel or the en banc court, the same reasons exist for postponing the petition deadline—avoiding the burden of appealing in two courts at once, and the inefficiency of briefing and reviewing a judgment that may change.

The Hartmans assert that our sister court has drawn a sharp distinction between motions for rehearing and for en banc reconsideration, but that is not necessarily true. Four members of the Court of Criminal Appeals concurred in one case and dissented in another on the ground that a motion including "en banc" in its title or citing the en banc rule does not extend the deadline for petitions for discretionary review.[8] But the Court itself issued no written opinion in either case, so we do not know whether the majority disposed of them on that ground or some other. Further, the minority was construing a different rule (Rule 68.2) than the one at issue here (Rule 53.7); although the two rules share similar language, they have different deadlines that the two courts must interpret as each sees fit.[9] As we interpret Rule 53.7, a "motion for re-

---

3. *See* TEX. R. APP. P. 53.7(a)(1)(2).

4. *See id.* 19.1 (emphasis added).

5. *See id.* 49.7.

6. *See id.* 41.2 (requiring vote on whether "a case will be heard or *reheard* en banc" upon request of a justice) (emphasis added); *id.* 47.5 (providing for opinions on "a denial of a hearing or *rehearing* en banc.") (emphases added).

7. *See id.* 49.3 (providing for disposal of a case on rehearing without briefing or oral argument).

8. *See Franks v. State,* 97 S.W.3d 584, 585 (Tex.Crim.App.2003) (Cochran, J., dissenting); *see also Ex Parte Sierra,* 122 S.W.3d 202, 204 (Tex.Crim.App.2003) (Johnson, J., concurring).

9. *Compare* Tex.R.App. P. 53.7(a) *("Petition.—* The petition must be filed with the Supreme Court clerk within 45 days after the following: (1) the date the court of appeals rendered judgment, if no motion for rehearing is timely filed; or (2) the date of the court of appeals' last ruling on all timely filed motions for rehearing.") *with id.* 68.2(a) *("First Petition.—* The petition must be filed within 30 days after either the day the court of appeals' judgment was rendered or the day the last timely motion for rehearing was overruled by the court of appeals.").

hearing" includes motions for en banc reconsideration.[10]

In either case, Rule 53.7 extends the petition deadline only if a motion is timely filed.[11] Although motions for rehearing must be filed within 15 days of judgment,[12] the City's motion here was filed 26 days after judgment. Nevertheless, it was timely filed.

 Unlike other motions for rehearing, en banc reconsideration may be requested at any time while a court of appeals retains plenary power:

> *While the court of appeals has plenary jurisdiction,* a majority of the en banc court may, *with or without a motion,* order en banc reconsideration of a panel's decision.[13]

While rehearing before a panel requires a motion, en banc reconsideration does not— any justice may request a vote on en banc reconsideration at any time, even without a motion.[14] Because justices may request and grant en banc reconsideration even *after* an untimely motion (or no motion at all), there would be little point in setting a deadline for them. Because the City's mo-

tion was filed within the court of appeals' plenary power, it was timely filed, and operated to extend the deadline for its petition for review.

To sum up, the City's post-judgment motion was styled a "Motion for Rehearing En Banc," cited the rules governing motions for rehearing generally, and asked the court to withdraw the panel opinion and issue a new one in its favor. Because this motion walked, talked, and quacked like a motion for rehearing, we decline to call it something else.[15] We hold the City's petition for review was timely filed.

## III.

On the merits, the City asserts the trial court had no jurisdiction of this case because a statutory exception for emergencies overrides any waiver of governmental immunity. We have jurisdiction to address this matter due to a conflict among the courts of appeals.[16]

 The Texas Tort Claims Act waives immunity from liability and suit in a num-

---

10. Our conclusion is not changed by the court of appeals' local rule requiring a motion for rehearing en banc to be filed separately from a motion for rehearing, *see* FOURTH CT.APP. LOC. R. 6.2, as that court has unequivocally held that "an en banc motion does not lose its essential nature as a motion for rehearing merely because it is directed to the full court rather than to the panel." *Yzaguirre v. Gonzalez,* 989 S.W.2d 111, 113 (Tex.App.-San Antonio 1999, pet. denied) (en banc).

11. *See* Tex.R.App. P. 53.7(a)(2).

12. *See id.* 49.1.

13. *Id.* 49.7 (emphasis added); *Yzaguirre,* 989 S.W.2d at 113 ("[A] motion for en banc review may be filed at any time within the period of plenary power.").

14. *See* TEX.R.APP. P. 41.2(c), 49.7.

15. *See Thomas v. Long,* —— S.W.3d ——, —— (Tex.2006) (holding substance of summary judgment asserting governmental immunity made it a plea to the jurisdiction); *see also City of New York v. Clinton,* 985 F.Supp. 168, 179 (D.D.C.1998), *aff'd,* 524 U.S. 417, 118 S.Ct. 2091, 141 L.Ed.2d 393 (1998) (attributing to Richard Cardinal Cushing the saying, "[w]hen I see a bird that walks like a duck and swims like a duck and quacks like a duck, I call that bird a duck.").

16. *Compare City of San Antonio v. Hartman,* 155 S.W.3d 460, 469 (Tex.App.-San Antonio 2004) (limiting § 101.055(2) to traffic accidents) *with Durham v. Bowie County,* 135 S.W.3d 294, 299 (Tex.App.-Texarkana 2004, pet. denied) *and City of Arlington v. Whitaker,* 977 S.W.2d 742, 744 (Tex.App.-Fort Worth 1998, pet. denied) (holding § 101.055(2) applied to flooding).

ber of circumstances.[17] But the Act includes a subchapter entitled "Exceptions and Exclusions" listing circumstances in which its waiver provisions do not apply.[18] Among those is section 101.055(2) governing emergency situations:

This chapter does not apply to a claim arising ... from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others ...

The Hartmans do not assert that any law or ordinance governed the placement of barricades on Rigsby Avenue. Nor do they assert that the City's acts or omissions show that it did not care what happened to motorists.[19] Accordingly, this exception to the Tort Claims Act applies unless the Hartmans presented some evidence that City employees were not reacting to an emergency situation.

■ That, of course, they did not and could not possibly do. The evidence is conclusive that an emergency situation existed. The City's declaration of a disaster began:

WHEREAS, the City of San Antonio on the 18 day [sic] of October, 1998, has suffered widespread or severe damage, injury, or loss of life or property (or there is imminent threat of same) resulting from severe flooding (as much as 20 inches in some areas) beginning 6 A.M. October 17, 1998 with continuation of rain forecast over the next several days ...

The Mayor sought assistance from then Governor Bush because of the tremendous rainfall. The City's Flood Assessment Report two months later stated that rainfall totals exceeded those expected in a 100–year flood. Several firefighters and City personnel testified that flood-related calls came in from 90 percent of the City, and that the disaster was beyond the community's resources.

The court of appeals found a fact issue here, holding that "emergency" does not include "what might be colloquially referred to as an 'emergency,'" and pointing to cases applying section 101.055(2) to police and emergency vehicle accidents.[20] While the statute certainly has been applied to traffic accidents,[21] it has also been applied in other circumstances,[22] and at

---

**17.** See TEX. CIV. PRAC. & REM.CODE §§ 101.021–025.

**18.** See id. §§ 101.051–066.

**19.** Because "conscious indifference" and "reckless disregard" are not defined in the statute, we give each its ordinary meaning. TEX. GOV'T CODE § 312.002. We have often interpreted these terms to require proof that a party knew the relevant facts but did not care about the result. See, e.g., Fidelity and Guar. Ins. Co. v. Drewery Const. Co., 186 S.W.3d 571, 576 (Tex.2006); Dillard Department Stores, Inc. v. Silva, 148 S.W.3d 370, 373–74 (Tex.2004); Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 785 (Tex.2001); Burk Royalty Co. v. Walls, 616 S.W.2d 911, 922 (Tex.1981).

**20.** 155 S.W.3d at 469.

**21.** See City of Amarillo v. Martin, 971 S.W.2d 426, 430 (Tex.1998); City of San Angelo Fire Dept. v. Hudson, 179 S.W.3d 695, 702 (Tex. App.-Austin 2005, no pet.); Smith v. Janda, 126 S.W.3d 543, 546 (Tex.App.-San Antonio 2003, no pet.); Fernandez v. City of El Paso, 876 S.W.2d 370, 376 (Tex.App.-El Paso 1993, writ denied).

**22.** See Riggs v. City of Pearland, 177 F.R.D. 395, 406 (S.D.Tex.1997) (applying § 101.055(2) to the use of mace and restraints during arrest); City of El Paso v. Segura, 2003 WL 1090661 (Tex.App.-El Paso 2003, pet. denied) (applying § 101.055(2) to object left in roadway).

least twice to floods.[23]

■ We must construe this statute according to what it says, not according to what we think it should have said.[24] And because the Act creates governmental liability where it would not otherwise exist, we cannot construe section 101.055(2) to exclude emergencies the Legislature might have intended to include.[25]

The Hartmans argue that the City had at least six hours to place a barricade on the west side of the Rigsby flood, a period they deem too long to constitute an emergency. But we cannot restrict our review to Rigsby Avenue, any more than the City could. The statute exempts governments reacting to an emergency *situation*, which necessarily includes prioritizing some risks over others. Under the statute, evidence that the City had time to do more at Rigsby Avenue is not evidence that the City was no longer reacting to an emergency situation.

There are some fact questions here— whether one or more barricades stood on the western edge of the Rigsby Avenue flood, and who bore responsibility to put them there. But even after resolving all those issues in the Hartmans' favor, there is no fact question whether the City was reacting to an emergency situation. As no evidence raises a material fact question on this jurisdictional issue, we hold an emergency situation existed as a matter of law.[26]

We recognize that if section 101.055(2) extends beyond traffic accidents, there will be some cases in which the existence of an "emergency" is unclear.[27] But we cannot re-write this section to make its boundaries more distinct, any more than we can re-write the Tort Claims Act itself because "use of a motor-driven vehicle" or "use of tangible personal property" are not always clear.[28]

The Legislature has determined that the public good will be better served by encouraging public employees to take immediate action in emergency situations, rather than by suing them later if their actions were imprudent. Whether the City should have prioritized the west side of Rigsby Avenue rather than other flooded roads in the City is precisely the kind of conduct this statute removes from judicial review.

Accordingly, we reverse the court of appeals' judgment and render judgment for the City.

---

**23.** See *Durham v. Bowie County*, 135 S.W.3d 294, 299 (Tex.App.-Texarkana 2004, pet. denied), *City of Arlington v. Whitaker*, 977 S.W.2d 742, 746 (Tex.App.-Fort Worth 1998, pet. denied).

**24.** See Tex. Gov't Code § 312.002.

**25.** See *City of Houston v. Jackson*, 192 S.W.3d 764, 770 (Tex.2006); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 701 (Tex. 2003).

**26.** See *Texas Dept. of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226–28 (Tex.2004).

**27.** See *id.*

**28.** Tex. Civ. Prac. & Rem. Code § 101.021; *see, e.g., Texas A & M Univ. v. Bishop*, 156 S.W.3d 580, 583 (Tex.2005) (holding state did not use knife in theatrical production); *San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244, 246 (Tex.2004) (holding state did not use suspenders patient employed to commit suicide); *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998) (holding unlocked door was not use of property causing patient's subsequent suicide); *Texas Dep't of Corrections v. Herring*, 513 S.W.2d 6, 9 (Tex.1974) (holding allegedly inadequate medical care was not use of tangible property).