Reversed and Rendered and Opinion filed May 29, 2008








Reversed and Rendered and Opinion filed May 29, 2008.

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00840-CV

_______________

 

TEXAS DEPARTMENT OF PUBLIC SAFETY, Appellant

 

V.

 

SHEATRI LITTLE, Appellee

                                                                                   
                                                            

On Appeal from the 155th District Court

Waller County, Texas

Trial Court Cause No. 05-08-17962

                                                                                           
                                                    

 

O P I N I O N

In this accelerated interlocutory
appeal, the Texas Department of Public Safety  challenges the trial court=s denial of its assertions of
governmental immunity.  Appellee Sheatri Little alleges that she was injured
when the Department=s employee, Trooper Sean Cheshire,  negligently drove his
patrol car into the vehicle in which Little was a passenger.  Because the Department
produced conclusive evidence that Cheshire was responding to an emergency call
at the time of the accident and Little does not contend that Cheshire failed to
comply with applicable law, we reverse and render judgment dismissing the suit.








I.  Factual
and Procedural Background

Although the parties dispute the
legal implications of the facts in this case, the facts themselves are
uncontroverted.  Trooper Cheshire was dining with three other troopers on the
evening of August 23, 2003, when he received a dispatch call to respond to a A10-99.@ This code signified that an officer
requested assistance with a wanted person.[1] 
Cheshire testified without contradiction that law enforcement officers consider
such a request to be an emergency.

In response to the call, Cheshire
left the other troopers and began driving south to the location identified by
the dispatcher.  Cheshire may have been traveling five or ten miles over the
speed limit, and he did not use the vehicle=s siren.  He testified that he
activated his emergency lights to cross an intersection and a railroad
crossing, then deactivated the lights.

After he had been driving for three
or four minutes, Cheshire slowed the vehicle as he attempted to contact the
dispatcher using a cellular telephone.  As he stated in a memorandum to his
superior officer, Cheshire wanted to contact the dispatcher regarding Athe urgency of the call, due to the
fact that [he] was the only DPS unit dispatched.@  While he was looking at the
telephone, Cheshire inadvertently allowed his vehicle to cross the opposing
lane of traffic and enter the shoulder of the northbound lane.  While
attempting to reenter the roadway, Cheshire lost control of the vehicle and
collided with a northbound vehicle in which Little was a passenger.  Cheshire
testified that he saw no other traffic prior to the accident.  He admits he Awas inattentive to the roadway
conditions.@  








 Two years after the accident, Little
filed suit, alleging that the Department is liable because her injuries were
proximately caused by the wrongful act or omission or the negligence of an
employee acting within his scope of employment in operating a motor vehicle.  See
Tex. Civ. Prac. & Rem. Code Ann.
' 101.021(1) (Vernon 2005).  She does
not allege that Cheshire was reckless or that his actions did not comply with
applicable law.  The Department included a plea to the jurisdiction in its
answer, and more than five months later, Little amended her petition.  The Department
reasserted its plea to the jurisdiction and moved for summary judgment.  The
trial court denied both and this accelerated interlocutory appeal timely
followed.

II.  Issues
Presented

In two issues, the Department
challenges the trial court=s denial of its plea to the jurisdiction and its motion for
summary judgment.

III. 
Analysis

A.        Plea
to the Jurisdiction

In a suit against a governmental
unit, the plaintiff must affirmatively demonstrate the trial court=s jurisdiction by alleging a valid
waiver of immunity. Dallas Area Rapid Transit v. Whitley, 104 S.W.3d
540, 542 (Tex. 2003).  To determine if the plaintiff has met that burden, Awe consider the facts alleged by the
plaintiff and, to the extent it is relevant to the jurisdictional issue, the
evidence submitted by the parties.@ Id. (quoting Tex. Natural
Res. Conservation Comm=n v. White, 46 S.W.3d 864, 868 (Tex. 2001)). 
We review de novo a trial court=s ruling on a jurisdictional plea, construing the pleadings
in the plaintiff=s favor and looking to the pleader=s intent.  Tex. Dep=t of Pub. Safety v. Grisham, 232 S.W.3d 822, 824B25 (Tex. App.CHouston [14th Dist.] 2007, no pet.).

1.         Burden
of Proof

The Department moved to dismiss on
the grounds that Aits sovereign immunity has not been waived under the Tort
Claims Act pursuant to Tex. Civ. Prac.
& Rem. Code Ann. ' 101.055(2) (Vernon 2005).@  This provision is an exception to
the waiver of sovereign immunity under the Act, and applies to claims against a
governmental unit arising: 








from the action of an employee while
responding to an emergency call or reacting to an emergency situation if the
action is in compliance with the laws and ordinances applicable to emergency
action, or in the absence of such a law or ordinance, if the action is not
taken with conscious indifference or reckless disregard for the safety of
others . . . .  

Id.  This is sometimes referred to as the Aemergency exception@ to the Tort Claims Act.[2]
Little responds that the City must prove that sovereign immunity was not waived
by producing evidence that Cheshire acted in compliance with applicable law and
was actually responding to an emergency call. 

A recent Texas Supreme Court case
clarifies the burden of proof under the Aemergency exception.@  See City of San Antonio v.
Hartman, 201 S.W.3d 667, 672 (Tex. 2006).  The Hartman case arose
from Aa rainstorm of historic proportions@ during which the City of San Antonio
was declared a disaster area.  Id. at 669.   The City placed barricades
at locations throughout the city to warn motorists of flooded roadways.  Id. 
At least one barricade faced west on Rigsby Avenue near a creek crossing;
nevertheless, a vehicle carrying four members of the Hartman family was driven
into the flooded roadway and  swept away.  Id.  All four occupants
drowned, and their survivors sued the City.  Id.  In response, the City
asserted the emergency exception to the Tort Claims Act.  Id.

The Texas Supreme Court explained the
interaction between the plaintiff=s pleadings and the burden of proof
on the plea to the jurisdiction:

The Hartmans do not assert that any
law or ordinance governed the placement of barricades on Rigsby Avenue.  Nor do
they assert that the City=s acts or omissions show that it did not care what happened
to motorists.  Accordingly, this exception to the Tort Claims Act applies
unless the Hartmans presented some evidence that City employees were not
reacting to an emergency situation.








Id. at 672.  As in Hartman, the plaintiff in this
case A[does] not assert that any law or
ordinance governed@ the actions of the government officialChere, Trooper Cheshire.  See id. 
And as in Hartman, the plaintiff in the present case does not Aassert that the [government]=s acts or omissions show that it did
not care what happened to motorists.@  See id.  Thus, the emergency
exception to the Tort Claims Act applies unless Little presented some evidence
that Cheshire was not reacting to an emergency situation or responding to an
emergency call.  See id.  In sum, Hartman places the burden on
the plaintiff to produce sufficient evidence to raise a fact issue concerning
whether the government employee was responding to an emergency.

2.         Jurisdictional
Evidence

Here, Little attempts to meet her burden
by relying on the fact that Cheshire had reduced his speed  and was not using
the patrol car=s emergency lights or sirens at the time of the accident.  But as
previously noted, she does not assert that his actions violated any laws,
ordinances, or policies.  And in the absence of such factors, the use of
emergency lights or sirens is discretionary.  See Tex. Transp. Code Ann. '' 546.003, 546.004 (Vernon
1999).  

Little also argues that at the time
of the accident, Cheshire did not subjectively believe that he was responding
to an emergency situation, or  he doubted the emergency nature of the call.  In
support of this position, Little relies on Cheshire=s memorandum to his superior officer[3]
and on his deposition testimony:

Q:        At the time that this incident occurred, you
were questioning in your mind as to whether or not this was truly an emergency
call, were you not?                

A:        I
was - - at the time I was trying to find out to ensure that it was an emergency
call to negate the need for an emergency response.

According to Cheshire=s uncontroverted testimony, several
units are usually dispatched in response to a A10-99,@ but to his knowledge, he was the
only trooper who was asked to respond in this instance.  Thus, he attempted to
telephone the dispatcher for clarification or confirmation.  








Cheshire=s attempt to gather more information
does not change the fact that he actually received a A10-99,@ which is an emergency call.  See Tex. Civ. Prac. & Rem. Code Ann. ' 101.055(2) (Vernon 2005) (governing
immunity for claims arising from a governmental employee=s actions while Aresponding to an emergency call,@ as well as the employee=s reactions to an Aemergency situation@) (emphasis added).  At the time of
the accident, Cheshire was continuing to respond to the emergency call by
driving to the location identified by the dispatcher.

Finally, Little points out that the
dispatcher miscoded the call.  In fact, the dispatcher should have identified
the request as a A10-66,@ indicating that an officer requested assistance with a
Department warrant.  According to Cheshire, the majority of such warrants are
traffic citations and could be non-emergencies.  It is undisputed, however,
that Cheshire did not learn of the dispatcher=s error until after the accident. 
Thus, he was responding to an Aemergency call,@ even though the call did not
correspond to the Aemergency situation@ it purported to identify.

In sum, the evidence produced by the
Department in support of its plea to the jurisdiction conclusively establishes
that Cheshire was responding to an emergency call at the time of the accident,
while none of the evidence on which Little relies controverts that evidence or
otherwise raises a genuine issue of material fact.  We therefore reverse the
trial court=s order denying the Department=s plea to the jurisdiction and
dismiss the case for want of jurisdiction.  In light of our disposition of this
issue, we do not reach the Department=s challenge to the trial court=s denial of its motion for summary
judgment.








 

 

IV. 
Conclusion

Because the Department established
its entitlement to governmental immunity, we reverse the judgment of the trial
court and dismiss the case for want of jurisdiction.

 

 

 

/s/        Eva M. Guzman

Justice

 

Judgment rendered and Opinion filed
May 29, 2008.

Panel consists of Justices Fowler,
Seymore, and Guzman. 

 

 









[1]  Cheshire testified, AA 10-99 subject is a wanted person.  And when an officer is asking for
assistance with a 10-99 subject, it is considered by law enforcement officers
as an emergency call similar to an officer down.@  Corporal Victor Gails also testified, AOur dispatcher called Trooper Cheshire to go assist a game warden who
was out on a wanted person.@





[2]  See, e.g., Pakdimounivong v. City of
Arlington, 219 S.W.3d 401, 410 (Tex. App.CFort Worth 2006, pet. denied); Durham v. Bowie County, 135
S.W.3d 294, 297B98 (Tex. App.CTexarkana
2004, pet. denied); Borrego v. City of El Paso, 964 S.W.2d 954, 957B58 (Tex. App.CEl
Paso 1998, pet. denied).  





[3]  As discussed supra at 2, Cheshire stated that
he wanted to contact the dispatcher regarding Athe urgency of the call, due to the fact that [he] was the only DPS
unit dispatched.@