# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-20-00071-CV

---

**City of Killeen–Killeen Police Department, Appellant**

**v.**

**Aamir Terry, Individually and A/N/F to A.T., Minor Child, Appellee**

---

### FROM THE 146TH DISTRICT COURT OF BELL COUNTY
### NO. 308,121-B, THE HONORABLE JACK WELDON JONES, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellee Aamir Terry, individually and as next friend to A.T., his minor child, sued Appellant City of Killeen—Killeen Police Department for injuries and damages resulting from a Killeen Police Department (KPD) officer's vehicle colliding with Terry's vehicle. Appellant filed a plea to the jurisdiction, asserting governmental immunity preserved through the emergency and 9-1-1 response exceptions to the waiver of immunity under the Texas Tort Claims Act (TTCA). The trial court denied the plea, and we will affirm the trial court's order.

## BACKGROUND

Terry alleges that he and his child were injured when his vehicle was struck by a police vehicle driven by KPD Officer Jonathan Player. At about 4:20 p.m. on April 2, 2017, Terry's vehicle was traveling southbound on West Trimmier Road in the right-hand lane approaching an intersection with East Stan Schlueter Loop, on which Player was traveling

westbound. Player's dash-cam video shows partly cloudy skies with no precipitation. Player was responding to a 9-1-1 call reporting a stabbing, running "Code III," which allows the officer to run with lights and sirens when responding to a major crime like a felony or when a person's life or safety may be an issue. He testified that he understood that emergency vehicles under a Code III may disregard traffic-control devices but must do so in a safe and prudent manner with due care, taking into consideration other vehicles, pedestrians, weather, traffic, and obstacles.

Player had a red traffic light at Trimmier but—having activated his lights and siren approximately 850 feet before the intersection, sounded his air horn three times, and slowed from 72 miles per hour (mph)—entered the intersection in the left-most westbound lane at approximately 61 mph. The dashcam video shows that no cars were stopped on Stan Schlueter in front of Player before the intersection with Trimmier. To Player's right on Trimmier, three cars were stopped and slightly spaced facing in the direction of Terry's travel while, in an outer lane in that direction, a car crossed Stan Schlueter, and another turned right on Stan Schlueter as Player approached. In his affidavit, Player stated that he checked for traffic and, believing that cross-traffic had stopped in response to his emergency signals, began to accelerate.[1] Terry, who Player said was in the outside lane of Trimmier and blocked from his view by the stopped cars,

---

[1] Player stated in his affidavit that he "began to accelerate through the intersection" after seeing cross-traffic on Trimmier stopped, then attempted to stop after seeing Terry's vehicle. Player testified at the hearing, however, that he was "about to press on the gas pedal" at the intersection but that the collision occurred before he had the chance to do so. He also acknowledged that the dash-cam video did not show the brakes activated just before the collision. Because the standard of review requires us to take as true evidence favorable to the non-movant and resolve any doubts in its favor, we will assume for purposes of this appeal that Player began to accelerate through the intersection and did not actively re-engage the brakes. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226-28 (Tex. 2004).

had a green light and proceeded into the intersection. Player's vehicle slowed to 54 mph as it struck Terry's vehicle.

Terry sued, alleging negligence and negligence per se toward him and his child and seeking to impose liability on Appellant through respondeat superior. Terry asserted that Appellant is liable under the TTCA because KPD's employee, acting in the course and scope of his employment, injured Terry and his child through the operation of a motor vehicle; Terry alleged that Player would have been responsible and Appellant would be liable if it were a private person. *See* Tex. Civ. Prac. & Rem. Code § 101.021. Terry added allegations that Player acted with conscious indifference or reckless disregard for the safety of others and a claim for gross negligence after appellant filed a plea to the jurisdiction.

Appellant asserted in its plea to the jurisdiction that its governmental immunity was preserved because Player was responding to an emergency and was operating an emergency vehicle in response to a 9-1-1 call, was not reckless, and complied with all applicable statutes and ordinances. *See id.* §§ 101.055(2), .062; *see also* Tex. Transp. Code §§ 546.001(2), (3), .002(b)(1).

The trial court denied the plea without stating a specific basis.

## APPLICABLE LAW

Governmental entities generally are immune from suits seeking to impose tort liability. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). The TTCA waives immunity from damages arising from an entity's use of a motor vehicle. Tex. Civ. Prac. & Rem. Code § 101.021(1); *Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 927 (Tex. 2015). But the TTCA does not waive governmental immunity from a claim arising from

3

the action of an employee reacting to an emergency situation if the action complies with the laws and ordinances applicable to emergency action or, if there are no such laws or ordinances, the action is not taken with conscious indifference or reckless disregard for the safety of others. Tex. Civ. Prac. & Rem. Code § 101.055(2); *City of Amarillo v. Martin*, 971 S.W.2d 426, 430 (Tex. 1998). The TTCA waiver also does not apply to a claim against a public agency arising from the agency's employee's action that involves responding to a 9-1-1 emergency call unless the action violates a statute or ordinance applicable to the action. Tex. Civ. Prac. & Rem. Code § 101.062; *Guillen v. City of San Antonio*, 13 S.W.3d 428, 432 (Tex. App.—San Antonio 2000, pet. denied). The emergency-response exception is intended to balance the public's safety with the need for prompt emergency response and to prevent judicial second-guessing of the time-pressured decisions emergency personnel must make. *Martin*, 971 S.W.2d at 429-30; *City of San Angelo Fire Dep't v. Hudson*, 179 S.W.3d 695, 699 (Tex. App.—Austin 2005, no pet.).

An operator of an authorized emergency vehicle responding to an emergency call may proceed past a red or stop signal or stop sign, after slowing as necessary for safe operation, and may exceed a maximum speed limit as long as the operator does not endanger life or property. Tex. Transp. Code §§ 546.001(2), (3), .002(b)(1). The provisions of Transportation Code Chapter 546 do not relieve the operator of an authorized emergency vehicle from the duty to operate the vehicle with appropriate regard for the safety of all persons or from the consequences for the reckless disregard for the safety of others. *Id.* § 546.005.

The Texas Supreme Court has held that, although emergency-vehicle operators in emergency situations must be aware of public safety, the Legislature waived liability for emergency responders' conduct in those situations only when the conduct is at least reckless.

4

*Martin*, 971 S.W.2d at 430-31. The Texas Supreme Court held that imposing liability on emergency-vehicle operators for mere negligence in emergency situations would render meaningless the portion of TTCA Section 101.055 that specifically excludes emergency-vehicle operators from Section 101.021's general waiver of immunity for negligent operation of governmental vehicles.[2] *Id.* at 430.

In sum, a governmental entity is immune from suits to recover damages resulting from the emergency operation of an emergency vehicle unless the operator acted recklessly. *See id.*; *Smith v. Janda*, 126 S.W.3d 543, 545 (Tex. App.—San Antonio 2003, no pet.). The plaintiff has the burden of proof to establish that the emergency exception does not apply. *Quested v. City of Houston*, 440 S.W.3d 275, 284 (Tex. App.—Houston [14th Dist.] 2014, no pet.). "[A] plaintiff must show that the operator has committed an act that the operator knew or should have known posed a high degree of risk of serious injury." *Martin*, 971 S.W.2d at 430 (citing *Wal-Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 326 (Tex. 1993) (discussing definition of "gross negligence" and explaining that "conscious indifference" test focuses on defendant's mental state, and "[u]nder this approach, the actor, although not actually intending to cause harm, must have proceeded with knowledge that harm was a "highly probable" consequence. . . . this mental component may be proved indirectly through a defendant's conduct").

---

[2] Terry argues that the Texas Supreme Court has effectively rewritten statutes by injecting language not drafted by the Legislature and interpreting the statutes such that the only standard is conscious indifference or reckless disregard, creating a nearly impossible standard to meet. Terry cites *City of Amarillo v. Martin*, 971 S.W.2d 426, 430 (Tex. 1998), and *San Antonio v. Hartman*, 201 S.W.3d 667, 672 (Tex. 2006), as exemplifying this action by the Texas Supreme Court. Without regard to whether Terry is correct or incorrect, this intermediate appellate court cannot overrule or disregard Texas Supreme Court authority. *Swilley v. McCain*, 374 S.W.2d 871, 875 (Tex. 1964); *Town of Highland Park v. McCullers*, ___ S.W.3d ___, 2021 WL 2766390, at *13 n.10 (Tex. App.—Dallas June 29, 2021, no pet.).

We review the disposition of a plea to the jurisdiction de novo. *Nettles v. GTECH Corp.*, 606 S.W.3d 726, 731 (Tex. 2020). When reviewing the denial of a plea to the jurisdiction, we apply a standard of review that generally mirrors that used for summary judgments. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226-28 (Tex. 2004). We take as true evidence favorable to the non-movant and indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Id*. at 228. When a governmental entity challenges jurisdiction on immunity grounds, the plaintiff's burden to affirmatively demonstrate jurisdiction includes the burden of demonstrating a waiver of immunity. *See Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019); *Ryder*, 453 S.W.3d at 927. If the evidence creates a fact question regarding the jurisdictional issue, the trial court should deny the plea and allow the fact issue to be resolved by the factfinder. *Miranda*, 133 S.W.3d at 227-28. A genuine issue of material fact exists when the non-movant presents more than a mere scintilla of evidence, which is evidence that would enable reasonable, fair-minded people to differ in their conclusions. *Shady Shores*, 590 S.W.3d at 551; *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600-01 (Tex. 2004).

## DISCUSSION

By its sole issue on appeal, Appellant contends that the trial court erred by denying Appellant's plea to the jurisdiction because Appellant's immunity was not waived under the TTCA. Appellant asserts that Player's actions fell within two exceptions to the TTCA's immunity waiver. First, Appellant argues that Player was reacting to an emergency situation and did not act with conscious indifference or reckless disregard for the safety of others. *See* Tex. Civ. Prac. & Rem. Code § 101.055(2). Second, Appellant contends that Player's actions

6

taken while responding to a 9-1-1 call fall within a similar waiver exception because his actions did not violate a statute or ordinance applicable to the action. *Id.* § 101.062(b).

Terry responds that Player's testimony raises a fact question about whether he violated the Transportation Code and was reckless in speeding through the intersection against the traffic light despite knowing it was dangerous and not being able to see all cross-traffic. Terry contends that Player's driving of the emergency vehicle was not permissible under statute because the collision shows that he did not "slow as necessary for safe operation" when proceeding past the red light and because he did "endanger life or property" while exceeding the maximum speed limit. *See* Tex. Transp. Code § 546.001(2), (3).

Player undisputedly exceeded the speed limit and entered the intersection with Trimmier against a red light. He was one of three officers dispatched to a reported stabbing; he did not know which officer could respond first. He drove toward the incident at speeds reaching 72 mph in a 55-mph zone. He activated lights and sirens 850 feet ahead of the intersection, sounded his air horn three times, and slowed his vehicle before entering the intersection. He knew that going through an intersection while "running Code" was hazardous for himself and other people on the road. Player testified that he knew that a car can be dangerous and that exceeding the speed limit can endanger life and property. He began to accelerate through the intersection even though three cars stopped on Trimmier to his right partially blocked his view of traffic in the outside lane of Trimmier from which two cars came before Player reached the intersection; one car crossed Stan Schlueter and the other turned right onto the right lane of Stan Schlueter. Player's speed was 54 mph at the time of the collision. KPD's investigator concluded that Player "proceeded through the intersection on a red light without safety and due care of other traffic," and a City review board determined that the collision was preventable.

7

Player's actions do not meet the standard of care that courts have held shows as a matter of law the absence of recklessness during emergency responses during which collisions occurred. In one such case, the officer responded with lights and sirens, "came to a near stop to clear the intersection," and "slowed down and looked both ways before entering the intersection one lane of traffic at a time," and another officer reviewing the incident determined that the officer "took every precaution possible when clearing the intersection." *Texas Dep't of Pub. Safety v. Kendziora*, No. 09-19-00432-CV, 2020 WL 6494210, at *4 (Tex. App.—Beaumont Nov. 5, 2020, no pet.) (mem. op.). Similarly, another court found no recklessness as a matter of law when the officer responding to an emergency drove his patrol car with lights and sirens activated, "slowed almost to a complete stop" before driving through a red light at an intersection, looked to see if there was any traffic movement, and entered the intersection "traveling approximately 10 to 15 m.p.h." *Harris County v. Spears*, No. 14-17-00662-CV, 2018 WL 4571841, at *5-7 (Tex. App.—Houston [14th Dist.] Sept. 25, 2018, no pet.) (mem. op.). Likewise, the court found no evidence of recklessness when an officer entered an intersection against red light because the officer "stopped before entering the intersection." *Texas Dep't of Pub. Safety v. Sparks*, 347 S.W.3d 834, 842 (Tex. App.—Corpus Christi 2011, no pet.).

This case is more like a case in which the San Antonio Court of Appeals held that there was a fact issue regarding whether an officer acted with reckless disregard for the safety of others when, while responding to "a domestic call in progress" seven miles away, he used his emergency lights and air horn before driving through a red light at 36 mph in a 30-mph zone despite having a blind spot that blocked his view before entering the intersection. *Perez v. Webb County*, 511 S.W.3d 233, 238 (Tex. App.—San Antonio 2015, pet. denied).

8

On this record—including Player's rate of speed when entering the intersection against the red light, coupled with the stopped cars partly obscuring his view of lanes of cross-traffic, and two cars that at least partially entered the intersection ahead of Terry—Terry has satisfied his burden to raise a genuine issue of material fact regarding whether Player's state of mind or level of care satisfied the claimed exceptions to the waiver of Appellant's governmental immunity. We resolve Appellant's sole issue in favor of the trial court's order.

## CONCLUSION

We affirm the trial court's order denying the City of Killeen–Killeen Police Department's Plea to the Jurisdiction.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Baker and Triana

Affirmed

Filed: January 26, 2022

9