Opinion issued
February 23, 2012

 

 



In
The

Court of
Appeals

For
The

First District
of Texas

————————————

NO. 01-11-00385-CV

———————————

C.H.
AND L.L.G., Appellants

V.

DEPARTMENT OF FAMILY
AND PROTECTIVE SERVICES,
Appellee



 



 

On Appeal from the 314th District Court

Harris County, Texas



Trial
Court Case No. 2006–09289J

 



 

 

* * * *

————————————

NO. 01-11-00454-CV

NO. 01-11-00455-CV

———————————

K.D.G.
AND L.L.G., Appellants

V.

DEPARTMENT OF FAMILY
AND PROTECTIVE SERVICES,
Appellee



 



 

On Appeal from the 314th District Court

Harris County, Texas



Trial
Court Case Nos. 2007–02686J & 2009–06674J

 



 

 

MEMORANDUM  OPINION

          In
these three appeals, appellant, L.L.G., challenges the final decrees signed by
the trial court terminating her parental rights to her four minor children, C.M.H.,
L.H., J.G., and K.G.[1]  Appellant raises five identical issues in
each appeal challenging the legal and factual sufficiency of the evidence supporting
the termination of her parental rights.  

          We
affirm the final decree in each appeal.

Background Summary

          In
October 2006, Appellant was charged with the felony offense of injury to a
child.  The charge related to Appellant’s
assault of her son, then seven-year-old C.M.H. 
Appellant later pleaded guilty to the lesser-included offense of assault—family violence, a class A
misdemeanor.  In relation to this incident,
the Department of Family and Protective Services (“the Department”) took C.M.H.
and his five-year old sister, A.H., into custody.  The Department filed its “Original Petition
for Protection of a Child, for Conservatorship, and for Termination in a Suit Affecting
the Parent-Child Relationship” in October 2006 against Appellant and the
children’s father, C.H.  

          Appellant
gave birth to a baby girl, J.G., in December 2006.  In March 2007, the Department filed a
separate suit affecting the parent-child relationship with respect to J.G
against Appellant and J.G.’s father, K.D.G. 


          In
October of 2007, decrees were signed by the trial court regarding the three children.
 In the 2006 action, concerning C.M.H.
and A.H., the court appointed their father, C.H., as the children’s sole
managing conservator.  The court named
Appellant as a possessory conservator.  In the 2007 action, the court named Appellant
and J.G.’s father, K.D.G., as J.G.’s joint managing conservators, with K.D.G. named
the primary managing conservator.  

          In
2008, C.H. took a job overseas.  As a
result, C.M.H. and A.H. went to live with Appellant.  Appellant had another daughter, K.L.G., on
December 29, 2008.  K.D.G. is K.G.’s
biological father.  In April 2009, Appellant
married K.D.G.  At that point all, four
children were in Appellant’s care.  

          On
September 17, 2009, the Department received another referral alleging that
Appellant had physically abused A.H.  The
referral stated that A.H. had complained to the school nurse that her back
hurt.  An examination revealed that A.H. had
bruises on her thighs, bruising on her buttocks, and several linear bruises on
her back with scabbing.  AH stated that Appellant
had hit her with a “white stick.”        

          The Department sent an
employee to Appellant’s home to investigate. 
C.M.H. told the Department employee that Appellant hit him and A.H. with
the plastic rod used to adjust the window blinds, with extension cords, and with
belts.  He told the employee that he was
afraid because he would get “whupped” by Appellant after
the employee left. 

          In an
affidavit, the Department employee would later testify,

Because of the visible bruising, the disclosures made by
the children, [C.M.G.’s] fear of his mother and the lack of protective adults
in his life, and [Appellant’s] significant past history including a conviction
for injury to a child based on an incident which required [C.M.G.] to have
emergency medical treatment after a “whupping,” . . .
the decision was made to remove the children from the care of [Appellant]. 

 

The Department took all four children into custody
and placed them in foster homes.  

          In the
2006 and 2007 suits involving the three oldest children, the Department filed an
“Original Motion to Modify Conservatorship, for Termination of Parent-Child
Relationship, and Suit for the Protection of a Child in an Emergency.”  On September 21, 2009, the Department also
filed a new suit by filing its “Original Petition for Protection of a Child,
for Conservatorship, and for Termination in a Suit Affecting the Parent-Child Relationship”
pertaining to Appellant’s fourth child, K.G. 
In all three suits, the Department requested that the parent-child
relationship be terminated between Appellant and her four children.          To
support termination, the Department relied on acts that, as defined by Family
Code section 161.001(1), support termination of the parent-child relationship.  The Department cited Appellant’s placement on
deferred adjudication community supervision for her assault of C.M.H. in
October 2006, conduct supporting termination under subsection 161.001(1)(L).[2]

          The
Department also alleged that Appellant had “knowingly placed or knowingly
allowed the child to remain in conditions or surroundings which endanger the
physical or emotional well-being of the child, pursuant to § 161.001(1)(D), Texas Family Code” and had “engaged in conduct or
knowingly placed the children with persons who engaged in conduct which
endangers the physical or emotional well-being of the children, pursuant to § 161.001(1)(E),
Texas Family Code.” [3]  The Department also relied on Appellant’s
alleged failure, in violation of subsection 161.001(1)(O),
to comply with provisions of a court order that specifically established the
actions necessary for the parent to obtain the return of the children who have
been in the permanent or temporary managing conservatorship of the Department
for not less than nine months as a result of the children’s removal from the
parent as a result of abuse or neglect of the children.[4]  

          In addition,
the Department sought to terminate the parent-child relationship between the
four children and the respective fathers. 
Specifically, it sought to terminate the parent-child relationship
between C.H. and the two oldest children, C.M.H. and A.H., and to terminate the
parent-child relationship between K.D.G. and the two youngest children, J.G.
and K.G.  The Department requested that,
in the event the parental rights of Appellant and the fathers were terminated,
it be appointed the children’s sole managing conservator.  

          The three suits
were tried together to a jury in March 2011. 
Incorporating the jury’s findings, the trial court rendered decrees for
termination in each case terminating the parent-child relationships between
Appellant and her four children and between the children and their
fathers.  With respect to the termination
of Appellant’s parental rights, the decrees recite that the trial court found,
by clear and convincing evidence, that Appellant had engaged in conduct as
defined in Family Code subsections 161.001(1)(D), (E), (L), and (O).  Each decree further recites that
the trial court determined by clear and convincing evidence that termination of
the parent-child relationship was in the children’s best interest.  The trial court also appointed the Department
as sole managing conservator of the children.

Legal Sufficiency of the
Evidence to Support Termination

          Appellant
presents five identical issues in each appeal.  Her first four issues raise challenges to the
legal and factual sufficiency of the evidence to support the predicate
termination findings under Family Code subsections 161.001(1)(D), (E), (L), and
(O).  Appellant’s fifth issue challenges
the legal and factual sufficiency of the evidence to support the finding that
termination was in the children’s best interest.  

A.      Burden of Proof and Standards of Review

          The
burden of proof at trial in parental-termination cases is by clear and
convincing evidence.  Tex. Fam.Code Ann. § 161.001; In re J.F.C., 96 S.W.3d 256, 263 (Tex. 2002).
 Section 161.001 of the Family Code
provides the method by which a court may involuntarily terminate the
parent-child relationship.  See Tex.
Fam. Code. Ann. § 161.001.  Under this section, a court may order the
termination of the parent-child relationship if the court finds, by clear and
convincing evidence, that (1) one or more of the acts enumerated in section
161.001(1) was committed and (2) termination is in the best interest of the
child.  Id.  “Only one predicate
finding under section 161.001(1) is necessary to support a judgment of
termination when there is also a finding that termination is in the child’s
best interest.”  In re A.V., 113 S.W.3d 355, 362 (Tex. 2003).

          “‘Clear
and convincing evidence’ means the measure or degree of proof that will produce
in the mind of the trier of fact a firm belief or conviction as to the truth of
the allegations sought to be established.”  Tex. Fam. Code. Ann. § 101.007 (Vernon 2008); J.F.C.,
96 S.W.3d at 264.  This
heightened burden of proof results in a heightened standard of review.

          When
determining legal sufficiency, we review all the evidence in the light most
favorable to the finding “to determine whether a reasonable trier of fact could
have formed a firm belief or conviction that its finding was true.”  J.F.C.,
96 S.W.3d at 266.  To give appropriate deference to the fact finder’s
conclusions, we must assume that the fact finder resolved disputed facts in
favor of its finding if a reasonable fact finder could do so.  Id.  We disregard all evidence that a reasonable
fact finder could have disbelieved or found to have been incredible.  Id.  This does not mean that we must disregard all
evidence that does not support the finding.  Id. The
disregard of undisputed facts that do not support the finding could skew the
analysis of whether there is clear and convincing evidence.  Id.  Therefore, in conducting a legal-sufficiency
review in a parental-termination case, we must consider all of the evidence,
not only that which favors the verdict.  See City of Keller v. Wilson,
168 S.W.3d 802, 817 (Tex. 2005).

          In
determining a factual-sufficiency point, the higher burden of proof in
termination cases also alters the appellate standard of review.  In re C.H., 89 S.W.3d 17, 26 (Tex. 2002).  “[A] finding that must be based on clear and
convincing evidence cannot be viewed on appeal the same as one that may be
sustained on a mere preponderance.”  Id. at 25.  In considering whether evidence rises to the
level of being clear and convincing, we must consider whether the evidence is
sufficient to reasonably form in the mind of the fact finder a firm belief or
conviction as to the truth of the allegation sought to be established.  Id.
We consider whether disputed evidence is such that a reasonable fact finder
could not have resolved that disputed evidence in favor of its finding.  J.F.C.,
96 S.W.3d at 266. “If, in light of the entire record,
the disputed evidence that a reasonable factfinder
could not have credited in favor of the finding is so significant that a fact finder
could not reasonably have formed a firm belief or conviction, then the evidence
is factually insufficient.”  Id.

          The
natural rights that exist between parents and their children are of
constitutional dimension.  Holick v. Smith, 685 S.W.2d 18,
20 (Tex. 1985). Therefore, termination proceedings should be strictly
scrutinized, and the involuntary termination statutes should be strictly
construed in favor of the parent. Id.
at 20–21.  However, “[j]ust as
it is imperative for courts to recognize the constitutional underpinnings of
the parent-child relationship, it is also essential that emotional and physical
interests of the child not be sacrificed merely to preserve that right.”  C.H.,
89 S.W.3d at 26.

B.      Challenge to Predicate Finding Under
Subsection 161.001(1)(L)

          As
mentioned, the termination of Appellant’s parental rights to her four children
was predicated on, among others, a violation of Family Code subsection
161.001(1)(L).  In
her third issue, Smith contends that the evidence was legally and factually
insufficient to support that predicate finding.

          Subsection
L of section 161.001(1) permits termination when clear and convincing evidence
shows that the parent has 

been convicted or has been placed on community
supervision, including deferred adjudication community supervision, for being
criminally responsible for the death or serious injury of a child under the
following sections of the Penal Code or adjudicated under Title 3 for conduct that
caused the death or serious injury of a child and that would constitute a
violation of one of the following Penal Code sections: 

 

(i)
Section 19.02 (murder); 

 

(ii) Section 19.03 (capital
murder); 

 

(iii) Section 19.04
(manslaughter); 

 

(iv) Section
21.11 (indecency with a child); 

 

(v) Section 22.01 (assault); 

 

(vi) Section
22.011 (sexual assault); 

 

(vii) Section 22.02 (aggravated
assault); 

 

(viii) Section 22.021 (aggravated
sexual assault); 

 

(ix) Section 22.04 (injury to a
child, elderly individual, or disabled individual); 

 

(x) Section 22.041 (abandoning or
endangering child); 

 

(xi) Section 25.02 (prohibited
sexual conduct); 

 

(xii) Section 43.25 (sexual
performance by a child); 

 

(xiii) Section 43.26 (possession
or promotion of child pornography); 

 

(xiv) Section 21.02 (continuous
sexual abuse of young child or children); 

 

(xv) Section 20A.02(a)(7)
or (8) (trafficking of persons); and 

 

(xvi) Section 43.05(a)(2) (compelling prostitution).

 

Tex. Fam. Code Ann. §
161.001(1)(L).

          Here, the
trial court instructed the jury that Appellant’s parental rights could be
terminated if it found that Appellant had “caused serious injury to [C.M.H.] by
an act or acts that resulted in the parent being placed on deferred
adjudication community supervision.”  Appellant
does not dispute that the evidence at trial established that she was placed on
deferred adjudication community supervision for the Class A misdemeanor offense
of assault–family
violence with respect to the injuries she inflicted on C.M.H. in October 2006.  See Tex. Penal Code Ann. §§ 22.01(a)(1), 22.01 (b)
(Vernon 2011); see also Tex. Fam. Code Ann. § 71.004 (Vernon 2008).  She also does not dispute that the offense of
assault–family violence
is a violation of Penal Code section 22.01 which can support termination under
Family Code subsection 161.001(1)(L)(v) if the assault resulted in serious injury of
a child. 
See Tex. Fam. Code Ann. § 161.001(1)(L)(v).  

          Appellant bases her sufficiency
challenge on the premise that the Department did not show that C.M.H. suffered
“serious injury” as result of the assault by Appellant.  Appellant points out that neither the Family
Code nor the Penal Code defines “serious injury.”  The jury charge also did not define it for
the jury.  

          Appellant points
out that the Class A misdemeanor offense of assault–family violence requires an establishment of “bodily
injury” but not “serious injury.”  The
Penal Code defines “bodily injury” as “physical pain, illness, or any
impairment of physical condition.”  See Tex.
Penal Code Ann. § 1.07(a)(8) (Vernon
Supp. 2011).  Appellant asserts that, because “serious
injury” is not an element of the offense of Class A misdemeanor assault–family violence, the
Department did not meet its burden to show that she was responsible for serious
injury to C.M.H.  Appellant posits that
the Department had to show “serious bodily injury,” as defined in the Penal
Code, was inflicted in the commission of the offense in order for section
161.001(L) to support termination.  The
Penal Code defines “serious bodily injury” as “bodily injury that creates a
substantial risk of death or that causes death, serious permanent
disfigurement, or protracted loss or impairment of the function of any bodily
member or organ.”  Id. § 1.07(a)(46).  Appellant contends that the Department did
not offer sufficient evidence to establish that C.M.H. suffered serious bodily
injury as defined in the Penal Code.

          Appellant’s
assertion that the Department was required to show that C.M.H. suffered “serious
bodily injury” as defined in the Penal Code finds no support in the law.  To the contrary, a review of the offenses listed
in section 161.001(1)(L) contradicts this
assertion.  A number of the offenses
identified in subsection L do not require a showing of any form of bodily injury.  For example, one means of committing the
offense of indecency with a child—an
offense listed in subsection L—is
exposure by a person of his anus or genitals to a child under the age of 17
years if the exposure was done with intent to arouse or gratify the sexual
desire of any person.  Tex. Penal Code Ann. § 21.11
(Vernon 2011).  A victim of such an offense may not suffer
bodily injury but may nonetheless suffer serious injury in the form of
emotional or psychological injury.  See In re A.R.R., 61 S.W.3d 691, 700
(Tex. App.—Fort Worth 2001, pet. denied) (holding that evidence was sufficient
to show that aggravated sexual assault victim had suffered “serious injury” for
purposes of subsection L because evidence showed that she suffered damage to
her emotional well-being that would be a life-long problem), disapproved of on other grounds by In re A.V.,
113 S.W.3d 355, 360 (Tex. 2003) and In re C.H., 89 S.W.3d 17, 26 (Tex. 2002).
 Subsection L’s inclusion of such offenses
indicates that the type of “serious injury” supporting termination of parental
rights does not require “bodily injury” nor is it synonymous with “serious
bodily injury,” as defined in the Penal Code.  Cf. In re L.S.R., 92 S.W.3d 529, 530 (Tex. 2002) (denying petitions
for review but also disavowing any suggestion by court of appeals’ opinion that
“molestation of a four-year-old, or indecency with a child, generally, does not
cause serious injury” for purposes of subsection L).

          When, as
here, a term is not defined in a statute, we give it its ordinary meaning.  See
Tex. Gov’t Code Ann. § 312.002 (Vernon 2005); City of San Antonio v. Hartman, 201 S.W.3d 667, 672 n.19 (Tex. 2006).  Similarly, because the jury charge did not include
a definition of “serious injury,” we assume that the jurors applied the plain
and ordinary meaning of the word.  See Fenner v.
Samson Res. Co., No. 01–03–00049–CV, 2005 WL 2123043, at
*3 (Tex. App.—Houston [1st Dist.] Aug. 31, 2005, pet.
denied) (mem. op.). 


          The
dictionary defines “serious” in the context of “serious injury” to mean “having
important or dangerous possible consequences.” 
Webster’s New
Collegiate Dictionary 1050 (1981). 
Injury is defined as “hurt, damage, or loss sustained.”  Id. at 589.  

          At trial, the
Department offered into evidence its caseworker’s affidavit containing the
following description of the events and the injuries that had been reported in
relation to Appellant’s assault of then seven-year-old C.M.H.: 

. . . . [Appellant] mother beat [C.M.H.] with a
belt.  Police were called to the
scene.  When they arrived, [C.M.H.] was
being treated by Houston Fire Department paramedics.  [C.M.H.] was transported to the emergency
room of Texas Children’s Hospital. 
[C.M.H.] has very heavy “railroad track” type marks across his back and
across his lower stomach.  [C.M.H.]’s
left eye is swollen shut and there is a half-moon laceration under [C.M.H.]’s
left eye.  The mother’s explanation for
the eye injuries are that [C.M.H.] ran into a doorknob while running from
mother.  [C.M.H.] is small for a
seven-year-old.  Mother has been arrested
for injury to a child.

 

 . . . .  When Houston Fire Department arrived they
found [C.M.H.] sitting alone in the bathroom very distraught.  He was shaking and scared to speak whenever
mother was present.  He has injuries all
over his body.  His eyes are swollen.  He has belt marks head-to-toe.  He has swollen limbs, especially his thighs
and legs.  The physician examining [C.M.H.]
found evidence of chronic abuse.  He has
scars all over his body from abuse.  The
physician also examined [A.H.]. The physician found multiple scars on [A.H.].  There are scars in the forms of linear marks
across her belly.  When she was asked
what happened, she said her mother cut her with a knife.  [C.M.H.] could possibly be admitted due to his
injuries.  He is unable to walk at this
point and is having to be transported by wheelchair.

 

          Other
evidence admitted at trial showed that C.M.H. was taken to the Texas Children’s
Hospital’s emergency room following the incident.  He was admitted to the hospital and stayed
there for four days.  “The Physicians
Statement Regarding Injury to a Child” from Texas Children’s Hospital was admitted
into evidence.  It contains a sworn physician’s
statement indicating that permanent injury could have resulted to C.M.H. had he
not obtained immediate medical treatment.  The physician specifically indicated that
C.M.H.’s eye needed ophthalmologic follow-up. 
The physician described C.M.H.’s injuries as follows: “Patient has
multiple bruises/welts over chest/abdomen, thighs and arms.  Has left eye swollen shut with a laceration
under orbit. 
Per ophthalmologist [patient] has ‘corneal clouding’ (suggestive of
edema and trauma).”

          Given the
record, we conclude that the evidence, viewed in the light most favorable to
the subsection 161.001(1)(L) finding, was sufficiently clear and convincing
that a reasonable fact finder could have formed a firm belief or conviction
that Appellant had been placed on deferred adjudication
community supervision for being criminally responsible for the serious injury
of [C.M.H.].  We further conclude that,
viewed in light of the entire record, any disputed evidence could have been
reconciled in favor of the section 161.001(1)(L) finding or was not so
significant that the fact finder could not reasonably have formed a firm belief
or conviction that the elements of subsection L were shown.  Accordingly, we hold that the evidence was
legally and factually sufficient to support the section 161.001(1)(L) finding.

          We overrule
Appellant’s third issue in each appellate cause.[5]  

C.      Best Interest Finding 

          1.       Legal
Principles 

          In her fifth
issue, Appellant challenges the finding that termination would be in the children’s
best interest.  See Tex. Fam.
Code Ann. § 161.001(2) (Vernon 2011).
 Some of the factors that an appellate
court may consider in ascertaining the best interest of a child include the
non-exhaustive list set forth in Holley
v. Adams, 544 S.W.2d 367, 371–72
(Tex. 1976).  Those factors include the
following: (1) the desires of the child; (2) the emotional and physical needs
of the child now and in the future; (3) the emotional and physical danger to
the child now and in the future; (4) the parental abilities of the individuals
seeking custody; (5) the programs available to assist these individuals to
promote the best interest of the child; (6) the plans for the child by these
individuals or by the agency seeking custody; (7) the stability of the home or
proposed placement; (8) the acts or omissions of the parent that may indicate
that the existing parent-child relationship is not a proper one; and (9) any
excuse for the acts or omissions of the parent.  Id.  These factors are not exhaustive.  C.H.,
89 S.W.3d at 27.  “Best interest” does not require proof of any
unique set of factors, nor does it limit proof to any specific factors.  Holley,
544 S.W.2d at 371–72.
 The Holley
test focuses on the best interest of the child, not the best interest of the
parent.  In re R.F., 115 S.W.3d 804, 812 (Tex. App.—Dallas 2003, no pet.).
 The need for permanence is the paramount
consideration for a child’s physical and emotional needs.  Id.  The goal of establishing a stable, permanent
home for a child is a compelling governmental interest.  Id.

          With the
foregoing legal precepts in mind, we review the legal and factual sufficiency
of the evidence to support the finding that termination was in the children’s
best interest.

          2.       Analysis

          The evidence
discussed above supporting the subsection L determination is also probative of
whether termination of Appellant’s parental rights is in the children’s best
interest.  See C.H., 89 S.W.3d at 28.  Specifically, the evidence showing the
severity of the injuries inflicted on C.M.H. is probative of the best interest
finding.  In addition, the record shows
that A.H. had physical injuries inflicted by her mother over time.  

          When C.M.H.
was taken to the hospital in October 2006, A.H. was also taken to the emergency
room by emergency response personnel. 
Medical records from Texas Children’s hospital indicate that then
five-year-old A.H. had bruising and scars “not typical in areas explained by
active children.’”  The physician
indicated that his “impression” relating to A.H.’s “condition” was
“non-accidental trauma.”  The evidence
showed that when the Department investigator spoke with Appellant regarding her
assault of C.M.H., Appellant admitted to hitting C.M.H. and also to hitting
A.H.            Appellant
told the investigator that she had hit the children with a belt because she
caught C.M.H. touching A.H.’s bottom.  Appellant
admitted that she had overreacted.  She
attributed her overreaction to the fact that she had been sexually abused as a
child by her father.  

          The evidence also
showed that, in September 2009, Appellant hit A.H. with a plastic rod leaving
linear bruising on A.H.’s thighs, buttocks, and back “with scabbing.”  During a later psychological evaluation,
Appellant admitted to hitting A.H. but stated that she had not realized how
hard she was hitting her.  The Department
employee investigating the September 2009 referral also noted that C.M.H. had
“old marks on his legs, arms, and face.” 


          In addition
to the assault of C.M.H. in 2006 and the abuse of A.H. in 2009 that resulted in
the final removal of the children from Appellant’s home, the Department
introduced evidence that it had received other referrals regarding Appellant’s
abuse of her children.  In an affidavit, a
Department employee, who investigated the September 2009 abuse involving A.H.,
offered the following testimony regarding earlier referrals received by the
Department:

On January 17, 2006, [the Department] received a referral
alleging Physical Abuse of 6 year old [C.M.H.] by his mother . . . .  The referral stated that [C.M.H.] had a cut on
his lip and a missing tooth. It stated that [C.M.H.] said that he obtained the
cut on his lip as well as the tooth being knocked out during a “whooping.”  [C.M.H.] said that his mother was angry
because the teacher told his mother that he was not behaving on Friday.  [C.M.H.] said his mother hit him with a belt
on his face.  He said the belt did not
have a buckle but was a stretchy belt.  [C.M.H.]
said he was hit all over his body, including his face, with the belt.  [C.M.H.] had no other marks or bruises from
the belt.  [C.M.H.] later said that his
tooth did not occur from being hit with the belt but his Aunt [] pulled it out.
 However, [C.M.H.] was consistent about how
he obtained the cut on his lip.  This
case was ruled Unable to Determine.

 

On March 27, 2006, [the Department] received another
referral alleging Physical Abuse, Emotional Abuse and Sexual Abuse of [C.M.H.] and
Sexual Abuse of [A.H.] by their mother . . . and their maternal grandparents .
. . .  The referral stated on Saturday
March 25, 2006, [C.M.H.] was seen with a “knot” under his eye that was “puffy
and red.”  The referral stated that [Appellant]
hit [C.M.H.] in the eye and it looked like there was also a scratch possibly
from a ring. [C.M.H.] stated that [Appellant] hates him and she tells him that
she doesn’t like him.  The referral
stated that [Appellant] makes [C.M.H.] sit in a dark room so “she doesn’t have
to look at him.”  The referral also stated
that the maternal grandfather is a child molester that sexually abused all
three of his daughters when they were children. 
The referral stated that the maternal grandmother did not protect her
own children and is unable to protect her grandchildren.  This case was Ruled Out.

 

          The affidavit
also identified six other referrals received by the Department involving Appellant
and her children in which allegations of abuse or neglect had been made.  The affidavit indicated that these referrals
had been “ruled out,” “closed without disposition,” or “unable to
determine.”  

          The forensic
interviewer from the Children’s Assessment Center, who had interviewed C.M.H.
and A.H. following the 2009 referral, testified at trial.  She stated that, from the children’s
descriptions of being hit with the rod from the window blinds, belts, and
extension cords, she believed that Appellant’s abuse of the children was not a
single occurrence but was ongoing abuse. 


          Evidence was
also presented that the children were exposed to domestic violence while living
with Appellant.  The evidence showed that
Appellant’s first husband, C.H.—the
father of C.M.H. and A.H.—had been convicted of assaulting Appellant and that
the children had witnessed the domestic violence.  Other evidence showed that Appellant claimed
that her second husband, K.D.G.—father of J.G. and K.G.—was also controlling
and abusive.  The record indicated that
Appellant had difficulty understanding that her children could be placed at
risk by being in a home where there is domestic violence.  

          At trial, the evidence also showed
that the three girls, A.H., J.G., and K.G. were living with their maternal aunt
and C.M.H. was placed with his maternal great-aunt.  Testimony was given that the relatives want
to adopt the children.  The evidence
further showed that all four children are happy in their current
placements.  C.M.H. and A.H. are doing
well in school and are each on the honor role. 
Other testimony from a Department employee working with the children in
their current placements indicated that the two youngest children, J.G. and
K.G., “are doing great also.” 

          Evidence showed that, over the years, C.M.H.
and A.H. expressed their fear of Appellant. 
The court appointed guardian ad litem for the children interviewed C.M.H.
and A.H. several days before trial.  Each
expressed to him a desire not to return to their mother and to stay in his and
her current placement.  A.H. told the ad
litem that she was afraid of Appellant. 
C.M.H. stated that he feared returning to Appellant because he thought it
would ultimately result in his return to CPS custody.  

          At the time of trial, the two younger
children, J.G. and K.G. were three years old and five years old.  Thus, no evidence was presented regarding
either J.G.’s or K.G.’s desire to return to Appellant.   

          As evidence
weighing against the best-interest finding, Appellant points to the following: (1)
a number of witnesses testified that the two oldest children had expressed that
each missed their mother; (2) the forensic interviewer from the Children’s
Assessment Center testified that A.H. said that her mother was “nice” and that
A.H. wanted to see her mother; (4) the forensic interviewer stated that neither
C.M.H. nor A.H. indicated that he or she were afraid of Appellant; (5) the
guardian ad litem testified that he observed the interaction between Appellant
and the children during scheduled visits to be “generally good”; (6) Appellant
has taken parenting, anger management, and domestic violence classes; (7) Appellant
has “on her own initiative” taken and paid for individual therapy and marriage
classes; (8) Appellant is attending college; and (9) Appellant has paid a
portion of the child support she was ordered to pay after the children were
removed from her home.

          Appellant also
asserts in her brief as follows: 

Appellant testified that as a result of taking the
services, she learned to better evaluate herself and better understand her
children.  In addition she was willing to
continue taking anger management classes and extensive parenting classes to
avoid losing her parental rights. 
Despite being the victim of sexual abuse as a child, the psychiatric
evaluation found that she does not suffer from any major psychiatric illness
that would prevent her from parenting her children. 

 

          The
evidence admitted at trial indicates that appellant is in the process of being
rehabilitated.  She was attending
Remington College and making child support payments to the best of her
ability.  She completed anger management,
parenting and domestic violence courses. 
On her own initiative, she was participating in individual therapy and
had taken marriage classes.  She was even
paying for individual therapy on her own. 

 

          Undeniably, applying
the Holley factors, some evidence exists
in the record weighing against the best interest finding.  The record contains evidence showing that Appellant
has taken steps both to improve her life and to be a good parent.  Nonetheless, evidence cannot be read in
isolation; it must be read in the context of the entire record.  In termination cases, like elsewhere, it is
within the sole province of the jury to weigh the credibility of witnesses.  See In
re S.L., 188 S.W.3d 388, 394 (Tex. App.—Dallas 2006, no pet.) (citing
Golden Eagle Archery, Inc. v. Jackson,
116 S.W.3d 757, 761 (Tex. 2003) (stating fact finder “is the sole judge of the
credibility of witnesses and the weight to be given to their testimony”)).  Here, the fact finder could have reasonably
inferred that Appellant would continue her pattern and practice of physically abusing
her children as she had over the years.  The
jury also could have inferred that, as the two younger children became older,
they also might be subject to abuse.  Such an inference relates directly to Appellant’s
ability to provide a stable and suitable home for her children and indicates
that the children’s physical and emotional well-being may be endangered in the
future.  In sum, given the evidence, the jury
could have reasonably inferred that the children were at risk for abuse should they
be placed with Appellant and that Appellant could not provide them with a safe
and stable home.

          Given the
evidence, we conclude that the evidence, viewed in the light most favorable to
the best-interest finding, was sufficiently clear and convincing that a
reasonable fact finder could have formed a firm belief or conviction that
termination of the parent-child relationship between Appellant and her four
children was in the children’s best interest. 
We further conclude that, viewed in light of the entire record, any
disputed evidence could have been reconciled in favor of the finding that
termination of the parent-child relationship between Appellant and her children
was in their best interest or was not so significant that the fact finder could
not reasonably have formed a firm belief or conviction that termination was in
the children’s best interest.  Thus, we
hold that the evidence was legally and factually sufficient to support the
best-interest finding.

          We overrule
Appellant’s fifth issue in each appellate cause

Conclusion

          We
affirm the final decree in each appellate cause terminating Appellant’s
parental rights.

 

Laura Carter Higley

                                                                      Justice


 

Panel consists of Chief
Justice Radack and Justices Higley and Brown.











[1]
        The Department of Protective and Family Services
filed three separate suits affecting the parent-child relationship involving
L.L.G.’s four children.  The first suit pertains
to the minor children, C.M.H. and A.H.  It
bears trial court cause number 2006–09289J and appellate cause number 01–11–00385-CV.  In that suit, the parental rights of the
children’s father, C.H. were also terminated. 
The father filed a notice of appeal. 
We dismissed his appeal by interlocutory order after he failed to file
his appellate brief and prosecute his appeal. 
See Tex. R. App. P. 38.8(a),
42.3(b), 43.2(f).  The
second suit pertains to the minor child, J.G.  It bears trial court cause number 2007–02686J and
appellate cause number 01–11–00455–CV.  The
third suit pertains to the minor child, K.G.  It bears trial court cause number 2009–06674J and
appellate cause number 01-11–00454–CV.  In those two suits, the parental rights of
K.D.G., the father of J.G. and K.G., were also terminated.  The father, K.D.G., filed a notice of appeal
but failed to file an appellate brief. 
We dismissed K.D.G.’s appeal by interlocutory order for failing to
prosecute his appeal.  See TEX. R. APP. P. 38.8(a), 42.3(b), 43.2(f).  

 





[2]         See Tex.
Fam. Code Ann. § 161.001(1)(L) (Vernon Supp.
2011).

 





[3]         See
id. §§ 161.001(1)(D), 161.001(1)(E).

 





[4]         See
id. § 161.001(1)(O).





[5]
        Having determined that the evidence was legally and
factually sufficient to support termination based on subsection 161.001(1)(L), we do not reach Appellant’s issues asserting that the
evidence was insufficient to support a finding under subsections D, E, and O.  See In
re A.V., 113 S.W.3d 355, 362 (Tex. 2003).