**Opinion issued November 5, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00690-CV

————————————

**VALENTIN JUAREZ AND BERTHA JUAREZ, HUSBAND AND WIFE AND NEXT FRIEND OF YOLANDA JUAREZ, DECEASED, AND RAUL MACIAS, Appellants**

**V.**

**HARRIS COUNTY, Appellee**

---

**On Appeal from the 55th District Court**
**Harris County, Texas**
**Trial Court Case No. 2015-48636**

---

## MEMORANDUM OPINION

Plaintiffs Valentin Juarez and Bertha Juarez, Husband and Wife and Next Friend of Yolanda Juarez, Deceased, and Raul Macias (collectively, Juarez) sued appellee Harris County, alleging negligence arising out of an automobile accident

in which a third party, Lanice Tobias, Jr., struck and killed Yolanda Juarez while he was fleeing from law enforcement, including Harris County Sheriff's Deputies, in a stolen vehicle. The County filed a motion for summary judgment or, in the alternative, a plea to the jurisdiction asserting that it was immune from suit in this case. The trial court granted the County's plea to the jurisdiction, dismissing all of Juarez's claims against the County.

In two issues on appeal, Juarez argues that there are genuine issues of material fact that preclude the dismissal of the claims. Because we conclude that this case falls within the emergency-response exception to the Texas Tort Claims Act's limited waiver of immunity, and, thus, the County remains immune from Juarez's suit, we affirm the trial court's grant of the County's plea to the jurisdiction.

**Background**

On April 23, 2015, deputies with the Harris County Sheriff's Office responded to a call from the Houston Police Department requesting help locating a vehicle that had been reported stolen in a carjacking two days earlier. HPD had tracked the stolen truck using GPS, and HCSO Deputy William Coker was in the approximate area. Coker found the stolen truck parked in front of a strip mall and kept it under surveillance until three individuals got into the truck and drove away. Deputy Coker and another HCSO patrol car containing two more deputies

2

followed as the truck—later determined to be driven by Lanice Tobias, Jr., (a co-defendant in this case)—left the parking lot.

The deputies observed Tobias run a stop sign and, knowing that the truck he was driving had been reported stolen in an armed robbery and thus that the three suspects in the truck should be considered dangerous, Deputy Coker attempted to initiate a traffic stop by using his marked patrol car's emergency lights and sirens. Tobias did not stop but instead sped away from the deputies and engaged in a series of dangerous driving maneuvers including speeding, running multiple stop signs, and making illegal lane changes. Deputies followed the stolen truck, using their emergency lights and sirens, until Tobias ran a red light at the intersection at Antoine and Fallbrook, striking and killing Yolanda Juarez. The entire pursuit lasted less than one minute.

Juarez sued numerous parties, including the County and Tobias, for negligence. Juarez alleged that Tobias "disregarded the red traffic signal light and entered the intersection" at Fallbrook and Antoine, striking [Yolanda's] vehicle and killing her. The pleadings state that Tobias was a "robbery suspect and was arrested at the scene," that before the crash, Tobias had been "involved in a high speed chase" with law enforcement, and that, "because of the pursuit by [law enforcement] officers, [Tobias] ran a red light crashing into [Yolanda's] vehicle." In addition to the negligence cause of action against Tobias for, among other

things, failing to keep a proper lookout and failing to yield the right of way, Juarez asserted that law enforcement officers were negligent in their pursuit of Tobias and "operated their vehicles in the same negligent and careless manner and also violated the duties that they owed to [Yolanda] in exercising ordinary care and to operate their vehicles during the chase as a reasonable and prudent person would."

The County moved for summary judgment, or alternatively, for dismissal based on a plea to the jurisdiction, asserting that it was entitled to have Juarez's claims dismissed on immunity grounds. The County asserted two arguments in support of its claim that the Texas Tort Claims Act (TTCA) does not waive its immunity from suit: (1) because the deputies in question have official immunity, the County's immunity is not waived by the limited waiver provisions in sections 101.021 and 101.025; and (2) the emergency-response exception set out in section 101.055 applies.

In connection with its combined motion for summary judgment and plea to the jurisdiction, the County provided the affidavit of Deputy Coker, accident-investigation reports generated from the different investigating officers including statements from witnesses and other deputies and officers, and an affidavit from an expert witness, Albert Ortiz.

Deputy Coker's affidavit set out the facts recounted above, emphasizing that he and the other deputies, Deputy A. Doucet and Deputy L. Gonzales, observed

4

Tobias run a stop sign as he turned onto a neighborhood street near the strip mall. Deputy Coker "activated [his] emergency lights and sirens to initiate a traffic stop." Deputies Doucet and Gonzales likewise activated their emergency lights and sirens. The truck "failed to pull over and accelerated away" from Deputy Coker, who was driving a HCSO marked patrol car. According to Deputy Coker, as chase ensued:

> Deputies Gonzales and Doucet joined the pursuit behind my unit. The suspect then ran two stop signs and entered a school zone at a high rate of speed. I followed the [stolen truck] at safe speeds and a safe distance. The [truck] ran a stoplight at Antoine Drive while turning south. The [truck] was moving in the [w]est lane of Antoine and came upon a truck which was stalled and blocking the lane. The suspect then illegally shifted lanes, cutting off another car and using the other car to block my pursuit. Even though I was prevented from immediately following the [stolen truck], I never lost sight of the suspect and resumed pursuit once safe.
>
> I proceeded to follow the suspect to the intersection of Fallbrook and Antoine. I notice that the traffic signal was red and slowed down to prevent any accidents involving my vehicle. I also observed a dark passenger car in the intersection as the [truck] was running through the red light and saw that there would be a crash.

Deputy Coker stated that the driver of the truck, Tobias, "made no attempt to brake, because the brake lights were never activated prior to the collision." The truck driven by Tobias flipped over Yolanda's car and rolled through the intersection. Deputy Coker then proceeded into the intersection and approached the stolen truck while Deputies Gonzales and Doucet approached Yolanda's car. Deputy Coker stated that "[t]he entire pursuit took around a minute."

5

Regarding his decision making, Deputy Coker stated that the HPD dispatch had identified the truck as having been "carjacked," which "typically include[s] threat of violence and may include the use of weapons." He decided to follow the truck when it left the strip mall and initiate a traffic stop "based on the driver being suspected of a violent felony offense and posing a further risk of danger to the community unless apprehended." Deputy Coker further stated that when the driver of the truck evaded his attempts to conduct a traffic stop, "[t]he suspect's hazardous driving created a danger to the public that required my intervention and which clearly outweighed the risks of a vehicle pursuit." Deputy Coker further "noted that traffic was reasonable for that time of day [which was just before noon], the conditions were clear and well-lit and the roads were dry. Traffic on Antoine was ordinary for the time of day." Deputy Coker stated that he "remained aware of changing road conditions including the stalled or stopped truck, and followed the suspect at a safe distance and speed."

Deputy Coker averred:

> In my discretion, and as a peace officer traveling to an emergency, as was the case in this instance, I can pursue a fleeing suspect. . . . Further, my emergency lights and siren were activated through the entire pursuit of the suspect vehicle. I believed that the need to respond to the emergency and apprehend the suspect outweighed the risk of not pursuing the suspect in light of the excessive speeds the suspect was traveling and his hazardous driving maneuvers. . . . Cars were aware of my approach and were moving out of my way as I approached.

The accident-investigation records, including statements from other deputies and law enforcement personnel, paramedics, and witness statements, corroborated Deputy Coker's affidavit and provided further details regarding the pursuit and crash.

Harris County also provided the affidavit of Albert Ortiz, a longtime veteran of and former Chief of Police of the City of San Antonio Police Department. Ortiz stated that he was retained by Harris County as an expert and he concluded that a reasonably prudent law enforcement officer under the same or similar circumstances as Deputy Coker experienced could have believed that his action was necessary based on the information he possessed when the conduct occurred. Ortiz further opined that "at all relevant times," the Harris County deputies were "on-duty, wearing the distinctive uniform of the Harris County Sheriff's Office, operating marked police cars as emergency vehicles, and their identity and authority was or should have been known to any reasonable person." He opined that the deputies "acted under color of law, within the course and scope of their employment . . . and in the lawful discharge of their official, discretionary duties as Texas peace officers." He further opined that the deputies acted in good faith.

Ortiz opined that the Harris County deputies were justified in relying on the information they had received from HPD regarding the stolen truck, and, "when the deputies observed three people get into the truck and drive away they had

7

probable cause to believe the occupants may have committed the robbery and/or [were] in possession of the stolen property taken during the felony offense." He stated:

> It is also my opinion the deputies had a duty as Texas peace officers to apprehend the suspects in the robbery and recover any property the suspects had converted to their own use. Given the seriousness of the felony offense (Aggravated Robbery), the number of suspects, and their immediate access to a getaway vehicle, it is my opinion the deputies had [a] duty as peace officers and an urgent need to apprehend the suspects as soon as reasonably possible. It is also my opinion that any officer in the same or similar circumstances as the deputies could have acted in the same or similar manner as deputies Coker, Doucet, and Gonzales.

Ortiz recounted the various methods the deputies had attempted to use, such as keeping the truck under surveillance and gathering adequate law enforcement personnel to help with the situation, and he identified the measures the deputies took to ensure the safety of innocent bystanders once the pursuit began. The measures included using their emergency lights and sirens during daylight with good visibility and road conditions, in moderate traffic. He recounted:

> The deputies observed the suspects illegally change lanes, cutting off another vehicle, and continue their flight south at a high rate of speed. Rather than duplicate the suspects' dangerous driving maneuvers, they chose to slow down until the flow of traffic allowed them to safely change lanes and continue their pursuit. Once they got around the slow vehicle they observed the suspects run the red light on Antoine Drive where it intersects with Fallbrook Drive and [strike] Ms. Jaurez's vehicle, killing her. The deputies made their way to the scene of the accident, arrested the suspects, and secured the scene for medical personnel and investigators.

8

Ortiz believed that the deputies kept a proper lookout, took appropriate evasive action, maintained safe control of their speed, yielded the right of way to other vehicles when appropriate, did not engage in or duplicate the suspects' dangerous driving maneuvers, and "[d]espite the short pursuit, undertook a risk versus need analysis." Finally, Ortiz opined that:

> At all times during the pursuit, the deputies were operating their patrol cars as emergency vehicles under favorable road, weather, lighting, vehicular, and pedestrian conditions. It is also my opinion the seriousness of the crime, the presence of multiple suspects, and their access to a getaway vehicle created the need for an immediate response and intervention by law enforcement officers. In my opinion, at all times during the pursuit, the deputies exercised ordinary care with due regard for the safety of the public.

Juarez responded to the County's combined motion for summary judgment and plea to the jurisdiction by identifying, in a conclusory manner, several "facts in dispute," including "[w]hether the Deputy Sheriff officers who were involved in the chase on April 23, 2015, followed the proper protocol as required by their training?"; "[w]hether there were sufficient reasons which the Deputy Sheriff officers who were involved in the chase on April 23, 2015 could have used to arrest Co-Defendant, Lanice Tobias, Jr., without necessarily being involved in a high-speed chase?"; and "[w]hether there was sufficient reason for the Deputy Sheriff officers to initiate a high speed chase after Co-Defendant, Lanice Tobias, Jr.?" The response did not address the County's grounds for seeking dismissal or summary judgment, based on the official-immunity defense under TTCA section

9

101.021 or on the emergency-response exception in section 101.055. Juarez's response likewise failed to provide or point to any summary judgment evidence.

The trial court granted Harris County's plea to the jurisdiction on July 5, 2018. This appeal followed.[1]

## Plea to the Jurisdiction

Juarez argues that the trial court erred in granting the plea to the jurisdiction and dismissing the suit because there are genuine issues of material fact precluding dismissal.[2]

### A. Standard of Review

Sovereign immunity from suit defeats a trial court's subject-matter jurisdiction unless the State expressly consents to suit, and governmental immunity operates like sovereign immunity in providing similar protection to subdivisions of the State, including counties. *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). Because governmental immunity from suit defeats a trial court's subject-matter jurisdiction, it may be raised in a plea to the jurisdiction. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018) ("Immunity from suit

---

[1]  *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8) (providing that person may file interlocutory appeal when trial court "grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001").

[2]  Juarez frames the appellate issues as challenges to the trial court's grant of summary judgment; however, the trial court's express ruling was that it granted the County's plea to the jurisdiction. Accordingly, we construe Juarez's issues on appeal as they relate to the order rendered by the trial court.

10

may be asserted through a plea to the jurisdiction or other procedural vehicle, such as a motion for summary judgment."); *Sykes*, 136 S.W.3d at 638 (governmental immunity from suit defeats court's jurisdiction and may be raised by plea to jurisdiction); *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999) (observing that immunity from suit and immunity from liability are separate principles; immunity from suit deprives court of subject-matter jurisdiction and is properly raised in plea to jurisdiction, while immunity from liability does not affect court's jurisdiction and therefore must be asserted in summary judgment motion).

A plea to the jurisdiction may challenge the pleadings, the existence of jurisdictional facts, or both. *Clark*, 544 S.W.3d at 770; *see Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004). "When a jurisdictional plea challenges the pleadings, we determine if the plaintiff has alleged facts affirmatively demonstrating subject-matter jurisdiction." *Clark*, 544 S.W.3d at 770. But, when the plea "challenges the existence of jurisdictional facts, we must move beyond the pleadings and consider evidence when necessary to resolve the jurisdictional issues, even if the evidence implicates both subject-matter jurisdiction and the merits of a claim." *Id.* at 770–71 (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012), and *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)).

In cases where the plea challenges jurisdictional facts, "the standard of review mirrors that of a traditional summary judgment." *Id.* at 771 (citing *Miranda*, 133 S.W.3d at 225–26). "[I]f the plaintiffs' factual allegations are challenged with supporting evidence necessary to consideration of the plea to the jurisdiction, to avoid dismissal plaintiffs must raise at least a genuine issue of material fact to overcome the challenge to the trial court's subject-matter jurisdiction." *Id.* (quoting *Miranda*, 133 S.W.3d at 221). We accept as true all evidence favorable to the plaintiffs, indulging every reasonable inference and resolving any doubts in the plaintiffs' favor. *Id.* We cannot, however, "disregard evidence necessary to show context, and we cannot disregard evidence and inferences unfavorable to the plaintiffs if reasonable jurors could not." *Id.*

The TTCA provides a limited waiver of governmental immunity if certain conditions are met. *See* TEX. CIV. PRAC. & REM. CODE §§ 101.021, 101.025; *Sykes*, 136 S.W.3d at 638. Relevant here, the TTCA provides:

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law. . .

12

TEX. CIV. PRAC. & REM. CODE § 101.021; *see id.* § 101.025(a) (providing that sovereign immunity to suit is waived and abolished to extent of liability created by TTCA).

Exempted from this waiver of immunity are claims included in the TTCA's "emergency-response exception" that arise:

> from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others[.]

*Id.* § 101.055(2). The policy underlying this exception to the TTCA's limited waiver of immunity is "to balance the safety of the public with the need for prompt responses to police, fire, and medical emergencies." *City of Amarillo v. Martin*, 971 S.W.2d 426, 429 (Tex. 1998); *City of San Angelo Fire Dept. v. Hudson*, 179 S.W.3d 695, 699 (Tex. App.—Austin 2005, no pet.). "Imposing liability for a mere failure in judgment could deter emergency personnel from acting decisively and from taking calculated risks" and would "allow for judicial second guessing of the split-second and time-pressured decisions emergency personnel are forced to make." *Hudson*, 179 S.W.3d at 699 (citing *Martin*, 971 S.W.2d at 430). The plaintiff bears the burden to establish that the emergency-response exception does not apply. *Quested v. City of Houston*, 440 S.W.3d 275, 284 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

13

**B.    TTCA's Emergency-Response Exception**

The County argued in its combined motion for summary judgment and plea to the jurisdiction that it is immune from suit and liability because the conduct of its deputies in this case falls under the TTCA's emergency-response exception and, thus, there is no waiver of immunity. The County argued and provided evidence that Juarez's own pleadings and the evidence of the circumstances surrounding the crash demonstrate that the deputies were reacting to an emergency situation and that their actions complied with the laws applicable to such emergency responses.

Regarding the first element—whether the deputies were "responding to an emergency call or reacting to an emergency situation"—we note that, although the TTCA does not define the terms "emergency call" or "emergency situation," Texas courts have interpreted the term "emergency" broadly. *See City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 (Tex. 2006). In *Hartman*, the supreme court stated, "[B]ecause the [TTCA] creates governmental liability where it would not otherwise exist, we cannot construe section 101.005(2) to exclude emergencies the Legislature might have intended to include." 201 S.W.3d at 673. The *Hartman* court held that, as a matter of law, the City of San Antonio was reacting to an emergency situation because it was dealing with the consequences of widespread and dramatic flooding. *Id.* Other courts have held that officers were reacting to an emergency situation when engaging with a suspect attempting to escape from a

14

patrol car onto a roadway, *Pakdimounivong v. City of Arlington*, 219 S.W.3d 401, 410–11 (Tex. App.—Fort Worth 2006, pet. denied), or in responding or reacting to "unforeseen circumstances that call for immediate action." *Jefferson Cty. v. Hudson*, No. 09-11-00168-CV, 2011 WL 3925724, at *3 (Tex. App.—Beaumont Aug. 25, 2011, no pet.) (mem. op).

The relevant jurisdictional evidence, including the deputies' affidavits and statements, the official accident reports, and the expert affidavit of Ortiz, indicate that the deputies were reacting to an emergency situation when they pursued Tobias, who was suspected of committing a violent felony, after he failed to stop when Deputy Coker initiated a traffic stop. The evidence established that, working in connection with the HPD, Deputy Coker located a truck that had been reported stolen in a carjacking and called for backup. Deputies Doucet and Gonzales were nearby and joined Deputy Coker. The deputies then observed Tobias, the driver of the stolen truck, leave the strip mall where he had been parked and drive into a neighborhood where he ran a stop sign. The officers were concerned about their own safety and that of the public due to the presence of multiple suspects in the truck and the report that the truck had been stolen by an armed individual, and they decided to initiate a traffic stop. Tobias refused to pull over and instead accelerated away from the deputies, and the deputies stated that they believed they had a duty to pursue the suspects.

15

Deputy Coker stated, for example, that "[t]he suspect's hazardous driving created a danger to the public that required my intervention and which clearly outweighed the risks of a vehicle pursuit." Ortiz likewise stated in his affidavit that "the seriousness of the crime, the presence of multiple suspects, and their access to a getaway vehicle created the need for an immediate response and intervention by law enforcement officers." Therefore, the deputies followed the truck with their emergency lights and sirens on—albeit occasionally at a distance because they were not able to keep up with the truck safely—until the truck crashed into Yolanda less than a minute later.

Based on a review of the specific facts presented in this case, we conclude that the evidence is sufficient to show that the deputies were reacting to an emergency situation at the time they pursued Tobias. *See* TEX. CIV. PRAC. & REM. CODE § 101.055; *Hartman*, 201 S.W.3d at 672; *see also Harris Cty. v. Spears*, No. 14-17-00662-CV, 2018 WL 4571841, at \*4 (Tex. App.—Houston [14th Dist.] Sept. 25, 2018, no pet.) (mem. op.) (holding that claims "arising from the operation of a patrol vehicle in response to an emergency fall within the scope of section 101.055(2)" and that evidence officer was responding to "a Medical Emergency [or] possible suicide" call that required officer's "immediate presence" and that he "reach the scene as quickly as he could" was sufficient to show he was responding to emergency). The burden then shifted to Juarez to raise a genuine issue of

16

material fact with respect to whether the deputies were responding to an emergency call or reacting to an emergency situation at the time of the pursuit. *See Hartman*, 201 S.W.3d at 672; *Quested*, 440 S.W.3d at 284.

In response to the County's plea, Juarez does not dispute any of this evidence beyond making a conclusory statement that the County "attempts to present an account of how the chase, in which its officers were involved in, and presents a version which is not necessarily accurate, or supported by any documentary evidence or fact." Juarez does not identify which, if any, of the numerous affidavits and reports provided by the County with its plea were inaccurate or improper. Juarez did not attach or refer to any jurisdictional evidence. Juarez's response instead listed some facts that were allegedly "in dispute," including, "[w]hether there were sufficient reasons which the Deputy Sheriff officers who were involved in the chase on April 23, 2015 could have used to arrest Co-Defendant, Lanice Tobias, Jr., without necessarily being involved in a high-speed chase" and "[w]hether there was sufficient reason for the Deputy Sheriff officers to initiate a high speed chase after Co-Defendant, Lanice Tobias, Jr."

These conclusory statements are insufficient to raise a genuine issue of material fact contradicting the County's evidence that the deputies were reacting to an emergency situation. *See, e.g.*, *Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 122

(Tex. 1996) (conclusory statements are not credible or susceptible to being readily controverted and will not support summary judgment); *Concierge Nursing Centers, Inc. v. Antex Roofing, Inc.*, 433 S.W.3d 37, 50 (Tex. App.—Houston [1st Dist.] 2013, pet. denied)) (holding that conclusory statements—i.e., those expressing factual inference without stating underlying facts on which inference is based—are incompetent to support summary judgment). Juarez's contention that there is a fact question regarding whether a high-speed chase was necessary also fails to address the otherwise uncontradicted evidence—namely, that Tobias was a suspect in a violent felony, that Tobias had committed at least one traffic violation that warranted the deputies' attempts to initiate a traffic stop, and that Tobias failed to comply with the deputies' attempt to stop him and instead sped away and crashed into Yolanda mere seconds later. *See* TEX. CIV. PRAC. & REM. CODE § 101.055(2); *Hartman*, 201 S.W.3d at 672–73.

Regarding whether the deputies' actions in this case complied with the laws and ordinances applicable to emergency action, we observe that the relevant law governing the operation of emergency vehicles is found in the Transportation Code. *See* TEX. TRANSP. CODE §§ 546.001–.005. The Transportation Code provides that, in operating an emergency vehicle, the operator may "proceed past a red or stop signal or stop sign, after slowing as necessary for safe operation"; may "exceed a maximum speed limit . . . as long as the operator does not endanger life

18

or property"; and may "disregard a regulation governing the direction of movement or turning in specified direction." *Id.* § 546.001(2)–(4). This conduct is permissible "only when the operator is . . . responding to an emergency call," "pursuing an actual or suspected violator of the law," or in other enumerated circumstances not applicable here. *Id.* § 546.002(b). An operator engaging in the conduct permitted by section 546.001 "shall use, at the discretion of the operator in accordance with policies of the department or the local government that employs the operator, audible or visual signals that meet the pertinent requirements[.]" *Id.* § 546.003.

Finally, the Transportation Code provides that a driver of an emergency vehicle is not relieved of "the duty to operate the vehicle with appropriate regard for the safety of all persons" or of "the consequences of reckless disregard for the safety of others." *Id.* § 546.005. Thus, to recover damages from a collision resulting from the emergency operation of an emergency vehicle, a plaintiff must show "reckless disregard for the safety of others" and establish that the emergency vehicle's operator "committed an act that the operator knew or should have known posed a high degree of risk of serious injury." *Martin*, 971 S.W.2d at 430; *Spears*, 2018 WL 4571841, at *5; *see* TEX. CIV. PRAC. & REM. CODE § 101.055(2); TEX. TRANSP. CODE § 546.005(2). This standard "requires a showing of more than a momentary judgment lapse." *Martin*, 971 S.W.2d at 430 (internal quotation omitted); *Spears*, 2018 WL 4571841, at *5.

19

In this case, the uncontradicted evidence demonstrates that, to the extent the deputies proceeded past stop signals or signs, exceeded the maximum speed limit, or disregarded a regulation governing the direction of movement, they did so pursuing Tobias, an actual or suspected violator of the law. *See id.* §§ 546.001–.002. At the time of the pursuit, Tobias was a suspect in the carjacking or, alternatively, for receiving stolen goods, and the deputies observed him break multiple traffic laws. The uncontradicted evidence further showed that the deputies employed both their emergency lights and sirens during the pursuit. *See id.* § 546.003. Finally, the County presented evidence that the deputies operated their vehicles with appropriate regard for the safety of all persons and were not reckless. Deputy Coker stated in his affidavit that, while he was aware of the dangers of the high-speed chase, he believed that the dangers associated with allowing Tobias to escape outweighed the risks of a pursuit. Deputy Coker and the other deputies reported monitoring their speed and driving conditions, proceeding carefully through traffic and intersections, and in fact avoided having any collisions involving their patrol cars.

On the facts of this case as presented, the evidence is sufficient to show that the deputies were not acting with reckless disregard for the safety of others at the time Tobias collided with Yolanda. *See* TEX. CIV. PRAC. & REM. CODE § 101.055(2); TEX. TRANSP. CODE § 546.005(2); *see also Spears*, 2018 WL 4571841,

20

at \*6 (evidence showed deputy was not reckless when he knew cars had seen and heard his emergency equipment because they moved aside as he approached, did not see any approaching cars and drove through intersection, and "was traveling approximately 10 to 15 m.p.h. when [plaintiff] hit the rear passenger side of his patrol vehicle"); *Tex. Dep't of Pub. Safety v. Sparks*, 347 S.W.3d 834, 841–42 (Tex. App.—Corpus Christi 2011, no pet.) (holding that evidence was sufficient to show officer did not act recklessly when evidence showed that officer was responding to emergency call with his lights and siren activated, he "slowed or stopped as he reached the intersection," and entered intersection "cautiously"); *Smith v. Janda*, 126 S.W.3d 543, 545–46 (Tex. App.—San Antonio 2003, no pet.) (no evidence of reckless disregard where ambulance driver was responding to emergency with lights and siren activated, "slowed down and looked around" as he approached intersection and entered intersection after "seeing that all traffic had stopped or yielded to him"). Again, the burden shifted to Juarez to raise a genuine question of material fact on this issue. *See Hartman*, 201 S.W.3d at 672; *Quested*, 440 S.W.3d at 284.

Juarez questions whether the deputies "followed the proper protocol as required by their training," whether the deputies "used excessive speed contrary to their training by the Houston Sheriff Department," and whether "the chase by the Deputy Sheriff officers on April 23, 2015 was excessive." But as stated above,

21

these conclusory statements are insufficient to raise a genuine issue of material fact. *See Ryland Grp.*, 924 S.W.2d at 122; *Concierge Nursing Centers, Inc.*, 433 S.W.3d at 50. Juarez does not point to any evidence of any "proper protocol" or other guidelines that the deputies failed to follow. Nor did Juarez provide any evidence that the deputies' speed or the pursuit in general was excessive.

And, in fact, the record here contains no allegations that either patrol vehicle struck any vehicle, including Yolanda's, or that the deputies caused a third-party vehicle to strike another vehicle. Rather, the evidence indicated that Tobias fled and ran the red light because law enforcement had attempted to stop him. Juarez pointed to no evidence or facts contradicting Ortiz's opinion, based on his review of the deputies' statements, photographs, dash-cam footage, audio files of the relevant radio communications, and the official law enforcement investigation reports, that the deputies kept a proper lookout, took appropriate evasive action, maintained safe control of their speed, yielded the right of way to other vehicles when appropriate, did not engage in or duplicate the suspects' dangerous driving maneuvers, and "[d]espite the short pursuit, undertook a risk versus need analysis." Ortiz's uncontradicted opinion was that, "[a]t all times during the pursuit, the deputies were operating their patrol cars as emergency vehicles under favorable road, weather, lighting, vehicular, and pedestrian conditions" and that they "exercised ordinary care with due regard for the safety of the public."

We conclude, on the facts of this case, that the County presented sufficient evidence demonstrating that the emergency-response exception applies, and Juarez failed to present any evidence raising a genuine issue of material fact. Accordingly, the trial court correctly determined that the County's immunity from suit was not waived by the TTCA and it therefore lacked subject-matter jurisdiction over the case.

We overrule Juarez's issues on appeal.

**Conclusion**

We affirm the trial court's grant of the County's plea to the jurisdiction.

Richard Hightower
Justice

Panel consists of Justices Kelly, Hightower, and Countiss.